APEX METAL STAMPING CO., INC., SUCCESSORS TO APEX ELECTRICAL MFG. CO., A CORPORATION, PLAINTIFF-RESPONDENT, v. ALEXANDER & SAWYER, INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 12, 1957—Decided January 22, 1958.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Sidney Krieger* argued the cause for defendant-appellant.

*Mr. Jerome S. Lieb* argued the cause for plaintiff-respondent (*Messrs. Harkavy and Lieb,* attorneys. *Mr. Abraham I. Harkavy* of counsel).

The opinion of the court was delivered by

FREUND, J. A. D. The defendant appeals from a judgment of $6,993.56, including interest and costs, entered by the trial court sitting without a jury, in a contract action where the plaintiff was precluded by the defendant from fully performing its agreement to manufacture 75,000 tire

*O*

stands. The grounds of appeal relate primarily to the *quantum* of damage.

The plaintiff, at the time of the inception and breach of the agreement here involved, was a partnership. Milton Tepfer, formerly a partner, and now secretary and treasurer of the plaintiff successor corporation, testified concerning the contract obligations between the litigants.

The testimony of Milton Tepfer disclosed that the agreed contract price for each tire stand was $.435. Each item of the product was manufactured in two identical parts, and the cost of production of each half was given as follows:

| | | |
|---|---|---:|
| Materials | | |
| | Steel | $.0582 |
| | Paint | .0398 |
| | 2 screws and 2 nuts | .00816 |
| | Carton and paper | .00217 |
| Labor | | |
| | Shear blanks | .0012 |
| | 1st press operation | .0018 |
| | 2nd press operation | .002 |
| | 3rd press operation | .004 |
| | Packing and strapping | .002 |
| Overhead (at 25% of labor cost) | | .00275 |

$$\text{Total } (\tfrac{1}{2})\ \$.12208$$
$$\text{x}\quad 2$$

$.24416 for each unit

However, this witness made an arithmetical error in reaching a sum on these figures when he said that the cost for each tire stand was $.23264. The trial judge was misled into accepting the same erroneous figure.

On cross-examination Tepfer said that the overhead percentage allocation factor (25% of labor cost dollars) was given to him by his accountant Rosenthal, but he stated he knew of his own knowledge how it was computed, and that it included the rent and light of the plant and a salary of $160 a week to his brother Albert Tepfer, a partner who was engaged in the plant as a general supervisor. He did not know whether workmen's compensation insurance, unem-

ployment and social security taxes and fire insurance were included in the overhead costs. The office administration and selling expenses were not reflected in the overhead computation. There was no descriptive testimony of the duties of any of the employees.

The accountant testified that his estimation of the overhead figure for the period during which this contract was being performed (March and April 1955) was 30% of labor costs, which would amount to a difference in the total cost of an additional $56.21 from a computation based on the 25% factor given by Tepfer. Defendant contends the difference would be several hundred dollars. Rosenthal testified, further, that the estimated overhead percentage included rent, light, heat, power, die write-offs, insurance and taxes, but did not include salaries paid to either partner, since good accounting practice did not generally call for this computation in factory overhead. Nor were the amounts paid to the bookkeeper reflected in the cost estimate because, the accountant testified, he did not "perform any cost operation."

At one point during the performance of the contract, when the plaintiff had completed 23,900 tire stands, the dies used in the operation were returned to the defendant. This was done, said Tepfer, because the defendant expected the ultimate purchaser of the product to inspect its plant and wanted it to appear that the product was being manufactured there. A memorandum bill was sent with the dies, indicating a net price of $2,000 as their cost. The bill further included the following statement: "Tire stand dies on memo. Dies to be returned to Apex."

As part of the factual contention in the pretrial order, the plaintiff claimed that it agreed, at the defendant's request after 22,000 items had been shipped, to cancel the balance of the order if the defendant would return the dies and pay plaintiff $2,000, and that this offer was rejected by the defendant.

During March and April 1955 the plaintiff shipped 23,900 tire stands to defendant and received payment therefor.

Subsequently, after the defendant had obtained possession of the dies, it manufactured the tire stands for itself as needed. It is conceded that defendant breached the agreement which prevented plaintiff from completing the order for the balance of 51,100 tire stands. From the testimony it appears that the date of expected completion of plaintiff's performance was November 1, 1955.

The defendant argues several grounds for reversal, all pertaining to the measure of damages: that the proof of loss of profits was uncertain; error in awarding damages in excess of $2,000, on the theory of rescission; failure to give credit for the release from care, trouble and risk incident to completion of the contract; failure to include the value of services of the partners in the cost of production; and, finally, the award of interest.

Preliminarily, we noted above that there was a simple mathematical error in adding the figures used by the plaintiff in its computation of cost, arriving at a figure of $.23264 instead of $.24416 for the cost of each tire stand. The greater expense would have resulted in an additional $588.67 cost for 51,100 units, and automatically less profit by that amount. Were this the sole problem presented on this appeal, we could, of course, exercise our original jurisdiction to correct such plain error. *R. R.* 1:5–3(*c*); *R. R.* 1:5–4(*a*); *R. R.* 2:5. However, insofar as these cost figures depend upon determination of the substantive question of what may properly be allocated to the cost of production and whether the trial court properly accepted Tepfer's 25% allocation factor for overhead, we must proceed to consider the stated grounds of appeal which include these matters.

The defendant's argument that plaintiff's damages were uncertain and insufficient so as to preclude an award is without merit. In discussing this question, it is necessary to distinguish between uncertainty as to the fact of damage and uncertainty as to its amount. See 5 *Williston, Contracts,* (*rev. ed.* 1937), § 1346, *p.* 3778; 5 *Corbin, Contracts* (1951), § 1022, *p.* 119; *Restatement, Contracts,* § 331(1), *p.* 515, *comment* (*a*)(1932); *Annotation,*

*"Uncertainty as to Damages,"* 78 *A. L. R.* 858 (1932). The facts in the instant case clearly establish that damage did result; the amount of the loss may be calculated with reasonable certainty, though not precisely. Where it is certain that damage has resulted and the evidence affords a basis for estimating the damage with some degree of certainty, recovery is allowed. *Wolcott, Johnson & Co. v. Mount,* 36 *N. J. L.* 262, 269–270, 272 (*Sup. Ct.* 1873), affirmed 38 *N. J. L.* 496, 501 (*E. & A.* 1875); *Weiss v. Revenue B. & L. Assn.,* 116 *N. J. L.* 208, 210 (*E. & A.* 1936); *Tessmar v. Grosner,* 23 *N. J.* 193, 203 (1957).

We next consider the defendant's argument that the plaintiff elected to rescind the agreement and therefore limited its right to recover. It is admitted by the plaintiff that it expressed to the defendant its willingness to cancel the balance of the order provided the defendant paid $2,000, the admitted value of the tools and dies used in the manufacturing process. But there was no proof that defendant accepted the offer and therefore there is no basis for contending for a rescission.

As mentioned above, prior to the time when the agreement was breached, the plaintiff returned to the defendant, at the latter's request, the dies specially designed for the tire stand process. They were accompanied by a "bill memo," indicating a charge of $2,000 for these items. Defendant contends this evidenced an executed rescission or discharge of the contract. However, upon our examination of the proofs, we are convinced that it was not so intended. The person who alleges facts to establish rescission has the burden of proving his claim by clear and satisfactory evidence. 3 *Black, Rescission and Cancellation* (2d ed. 1929), § 676, *p.* 1614. In the instant matter, there was no unequivocal manifestation on the plaintiff's part to elect rescission as a remedy, nor, as indicated above, any evidence of acquiescence therein by defendants. *Cf. Restatement, Contracts,* § 381, *p.* 712 (1932).

The defendant next contends that an allowance should have been made to it because plaintiff was relieved of care,

trouble, risk and responsibility necessary in completing the balance of the order for tire stands. There is authority for the allowance of such an offset to damages in other jurisdictions. *United States v. Speed*, 8 *Wall.* 77, 75 *U. S.* 77, 19 *L. Ed.* 449 (1868); *United States v. Behan*, 110 *U. S.* 338, 4 *S. Ct.* 81, 28 *L. Ed.* 168 (1883); *Masterton v. Mayor, etc., of Brooklyn*, 7 *Hill* (*N. Y.*) 61, 42 *Am. Dec.* 38 (1845); *Molyneux v. Twin Falls Canal Co.*, 54 *Idaho* 619, 35 *P. 2d* 651, 94 *A. L. R.* 1264 (*Sup. Ct.* 1934); 15 *Am. Jur., Damages,* § 158, *p.* 577; *contra, Joske v. Pleasants,* 15 *Tex. Civ. App.* 433, 39 *S. W.* 586 (*Ct. Civ. App.* 1897). However, the defendant has submitted no New Jersey authority, nor have we in our research found any such authority for the deduction of the element in the measurement of damages. On principle, if it were shown that relieving the plaintiff of such matters involved a pecuniary saving to plaintiff demonstrable with reasonable certainty, a fair basis for an allowance might be presented. But we need not decide what the appropriate rule would be in such a case, for in the instant case, not only was there no proof of such a saving, but that issue was not raised by defendant or considered by the trial judge. Therefore, the defendant is precluded from arguing this point as a ground of appeal. *R. R.* 1:7-1(c); *cf. Anderson v. Modica,* 4 *N. J.* 383, 390 (1950); *Roberts Elec., Inc., v. Foundations & Excavations, Inc.,* 5 *N. J.* 426, 429 (1950); *State v. Laurel Mills Sewerage Corp.,* 46 *N. J. Super.* 331, 334 (*App. Div.* 1957).

The principal ground of appeal is the argument that the computation of the cost of producing a tire stand did not include as part of the overhead expense the compensation paid to Milton Tepfer and Albert Tepfer, the partners operating the enterprise. Inferentially, the defendant argues that other overhead items, such as a bookkeeper's and another employee's salaries, were not included in the cost computation. For this purpose we are assuming that the accountant's testimony, rather than Milton Tepfer's, should be accepted as to what items went into the gross overhead numerator of the fraction that was used to determine the

percentage factor for fixing overhead unit cost per item manufactured. This is for the reason that Tepfer said he got his figures from the accountant and therefore the conflict in their testimony in this respect should be resolved in the accountant's favor. But, as will appear, our conclusions will require a retrial of the issue of damages, and therefore the conflict in the testimony as to the ultimate percentage factors of these witnesses is presently immaterial.

The fundamental concept concerning the measure of damages in a case of this kind, where the plaintiff is a supplier, producer or contractor who has been prevented by the defendant from completing his contract, is that the plaintiff is entitled to the profit that would have been realized if performance had been completed. This is generally measured by the difference between the contract price and the cost of performance or production. *Boyd v. Meighan,* 48 *N. J. L.* 404, 407 (*Sup. Ct.* 1886) ; *Kehoe v. Borough of Rutherford,* 56 *N. J. L.* 23, 27 (*Sup. Ct.* 1893) ; *Horst Co. v. Peter Breidt City Brewery,* 94 *N. J. L.* 230, 235 (*E. & A.* 1919) ; *DePonte v. Mutual Contracting Co.,* 18 *N. J. Super.* 142, 147–148 (*App. Div.* 1952) ; *United States v. Purcell Envelope Co.,* 249 *U. S.* 313, 320, 39 *S. Ct.* 300, 63 *L. Ed.* 620 (1919) ; *Masterton v. Mayor, etc., of Brooklyn, supra;* 15 *Am. Jur., Damages,* § 158, *p.* 575 *et seq.; Restatement, Contracts,* § 331, *Comment b* (1932).

The defendant's argument is that the cost of production for this purpose should have included the value of the services of the partners on the theory that these were supervisory or management services necessary in the production attendant upon completion of the contract. There is considerable general authority in support of this viewpoint. 15 *Am. Jur., Damages,* § 158, *p.* 575; *Columbus Mining Co. v. Ross,* 218 *Ky.* 98, 290 *S. W.* 1052, 50 *A. L. R.* 1394 (*Ct. App.* 1927), and cases cited in Annotation, 50 *A. L. R.* 1397; *Carros v. Birge,* 211 *S. W. 2d* 998 (*Tex. Civ. App.* 1948); *Kalin v. 1855–81st St. Corp.,* 24 *N. Y. S. 2d* 357 (*Sup. Ct.* 1940). *Cf. Diamond Wall Cement Co. v. Board of Education of Ridgewood,* 97 *N. J. Eq.* 65 (*Ch.* 1925),

affirmed 98 *N. J. Eq.* 410 (*E. & A.* 1925). Examination of the cases cited, however, will indicate that, by and large, they involve contract undertakings in which the owner or contracting party is devoting a substantial part of his personal efforts and time to the work just as would a hired employee, and it is apparently assumed that since the defendant's default has released the party from further involvement in the performance of the contract and made him available for other employment of his time and effort, a failure to deduct the value of the time would, in effect, give plaintiff a double recovery as to that element of the cost of production.

However, the writer of the annotation in 50 *A. L. R., op. cit., supra,* approaches the problem from the assumption that the contractor would not be able to deploy his personal efforts elsewhere, having committed himself to the contract in default. From this he concludes that the result in such a situation as the *Ross* case, *supra,* unwarrantably deprives the contractor of recovery, apart from strict loss of profit, in respect of the lost opportunity to employ his own services (50 *A. L. R.,* at *pages* 1397–1398). A more realistic approach would place each such case on its own factual basis, requiring an initial assumption that the value of the contractor's time be included in the cost of production, but permitting the plaintiff to show, if he can, that the actual loss of bargain resulting from the breach does not call for diminution by that factor because the default has not, in fact, freed the contractor for attention to other enterprises in which he has been able with equal profit to deploy his efforts, and this within the reasonably foreseeable contemplation of the defendant as a probable consequence of the default. *Cf. R. E. Davis Electric Co. v. Hopkins,* 155 *Or.* 510, 64 *P. 2d* 1317 (*Sup. Ct.* 1937); and see *Marcus & Co., Inc. v. K. L. G. Baking Co., Inc.,* 122 *N. J. L.* 202 (*E. & A.* 1938).

The problem presently under consideration has a considerably different aspect when seen in such a setting as is presented in the instant case. A manufacturing enter-

prise such as the plaintiff can apparently handle a number of production jobs at the same time, with relatively constant supervisory effort on the part of the managing partners. Here there is more reason to suppose that in the case of a default by a particular customer, as in the present case, there is no automatic pecuniary saving in respect to release of attention by supervisory personnel or partners; nor any compensating advantage from the default, as in being able to take on other contracts which would not be within the capacity of the managing personnel if the contract in question had to be completed. However, while these contingencies seem to us likely, we cannot assume that they are facts in the case before us without proof. If they could be proven, they would establish that plaintiff's actual pecuniary loss from the contract default can be estimated without including in the cost of production to complete the contract the value of the time of the managing partners. See, as to the comparable matter of general overhead, *King Features Syndicate, etc. v. Courrier*, 241 *Iowa* 870, 43 *N. W. 2d* 718, 41 *A. L. R. 2d* 467 (*Sup. Ct.* 1950); *Oakland California Towel Co. v. Sivils*, 52 *Cal. App. 2d* 517, 126 *P. 2d* 651 (*D. Ct. App.* 1942). The general principles recited are equally applicable to matters inferentially raised concerning other overhead items, including personnel.

█ Each case is to be determined on the particular fact situation revealed by the proofs. The plaintiff has the burden of proving all those elements reasonably necessary to establish the amount of its lost profits. *Molyneux v. Twin Falls Canal Co., supra.* The initial assumption must be that the value or expense of supervisory services, whether by partners or others, goes into the production of plant output as part of general overhead, see *Diamond Wall Cement Co. v. Ridgewood, supra,* and it is therefore plaintiff's burden to disprove the factual applicability of that assumption in the particular case by proving the contrary. We think plaintiff should have an opportunity to adduce such proof at a retrial, this being the first New Jersey opinion explicitly dealing with these aspects of the rule of damages.

Moreover, some of the other factual discrepancies noted above will have to be determined by proof in any event.

In connection with the foregoing, we have not overlooked the contention of plaintiff that defendant failed to make the point here urged before the trial court. At the argument counsel for defendant asserted he did make the point in summation before the trial judge but that these remarks were not transcribed by the reporter. Plaintiff's appellate counsel was not present at the trial and could neither confirm nor deny the representation. Under the particular circumstances of this case, we will accept the representation of defendant's counsel.

Lastly, the defendant challenges the award of interest on the recovery, arguing that the damages were unliquidated. We have recently had occasion to comment on the propriety of awarding interest where the award is attacked on the basis advanced here. Assuming *arguendo* that the damages were in fact not ascertainable by computation so as to classify them as liquidated, the award of interest was still proper. In *Hankin v. Hamilton Twp. Bd. of Education,* 47 *N. J. Super.* 70, 84 (*App. Div.* 1957) certif. denied, 25 *N. J.* 489 (1957), this court stated that the award of interest is to be found in "considerations of justice and fair dealing." See also *Dial Press, Inc. v. Phillips,* 23 *N. J. Super.* 543, 551 (*App. Div.* 1952). *Cf. Restatement, Contracts,* § 337(*b*), p. 542 (1932). We are satisfied that in this case the facts warrant an award of interest on such amount as will have been determined to be due at the retrial, from the time of the expected completion of performance to the date of institution of the action.

For the reasons stated, there must be a new trial on the question of damages. We have not treated certain other arguments raised by the defendant, as they relate solely to factual issues which will probably be relitigated.

Reversed and remanded for proceedings not inconsistent with the determination herein. No costs.