584 A.2d 915

**AM/PM FRANCHISE ASSOCIATION, Salvatore Miluzzo, Robert J. Williams, Robert E. Recotta, Paul Hastings and Thomas E. Doyle, Appellants,**

v.

**ATLANTIC RICHFIELD COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1990.

Decided Dec. 28, 1990.

Sol H. Weiss, Bryn Mawr, Nancy L. Goldstein, Philadelphia, for appellants.

Charles I. Thompson, James D. Coleman, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

Before us is an appeal by members of a franchisee association from an order of the Superior Court of Pennsylvania at No. 01958 Philadelphia 1987, issued April 14, 1988, affirming the order of the Court of Common Pleas at No. 157 November Term 1986, dated June 16, 1987, sustaining defendant's preliminary objections in the nature of a demurrer and dismissing the action.

We granted allocatur to determine whether the named appellants ("plaintiffs") have alleged sufficient facts to sustain a cause of action when they aver that the gasoline they purchased from the appellee ("ARCO") was not in conformance with the warranties made and resulted in their suffering economic harm. In making such a determination, we address the question of whether such damages constitute a "loss of good will," and whether good will damages are too speculative as a matter of law to permit recovery. For the reasons set forth herein, we find that the plaintiffs have alleged sufficient facts to entitle them to proceed with their claim and that the damages claimed are not good will nor so speculative as to deny them an attempt at recovery. We reverse the decision of the Superior Court in part and affirm in part.

## PROCEDURAL HISTORY

ARCO filed preliminary objections in the nature of a demurrer to Appellants' complaint, claiming that the dam-

ages sought by Appellants stemmed from a loss of good will, which are speculative and not recoverable as a matter of law. Additionally, the defendants claim that the plaintiffs should not be entitled to recover under a tort theory.

The trial court sustained ARCO's preliminary objections and dismissed Appellants' complaint.

The Superior Court affirmed the ruling of the trial court, holding that under current Pennsylvania law, damages sought for the breach of warranty claims due to a loss of good will are not recoverable as they have traditionally been considered to be too speculative. Additionally, the Superior Court held that the plaintiff was not entitled to recover in tort, finding that the duty of the parties to act in good faith arises under contract and not tort principles.

In the dissent to the opinion of the Superior Court, Judge Brosky remarked that the majority characterizes the claim as one for loss of good will, while he "view[s] appellants' claim as a request for lost profits occasioned by appellee's delivery of an unmerchantable product." 373 Pa.Super. 572, 580, 542 A.2d 90, 94 (1988). Additionally, Judge Brosky disagreed with the characterization of the loss as speculative, stating "[a]lthough calculating damages may have been a problem in the past, and in certain cases, may still be a problem, I cannot see that it presents a problem here.... Further, a comparison of the business profits before and after the delivery of the unmerchantable gasoline should prove to be enlightening." *Id.*, 373 Pa.Superior Ct. at 581, 542 A.2d at 94–95.

## FACTUAL HISTORY

The Plaintiffs claim to represent a class of over 150 franchisees of ARCO that operated AM/PM Mini Markets in Pennsylvania and New York during a three and one-half year period.

ARCO entered into franchise agreements with the plaintiffs which were comprised of a premises lease, a lessee dealer gasoline agreement, and an AM/PM mini-market

agreement. The products agreement mandated that the franchisees sell only ARCO petroleum products.[1]

The complaint sets forth the following facts: ARCO began experimenting with its formula for unleaded gasoline and provided its franchisees with an unleaded gasoline blended with oxinol, consisting of 4.5% methanol and 4.5% gasoline grade tertiary butyl alcohol (hereinafter "the oxinol blend") from early 1982 through September 30, 1985.

During this three and a half year period, the franchisees were required to sell the oxinol blend to their clients who desired unleaded gasoline. The franchisees were given no opportunity to buy regular unleaded gasoline from ARCO during that period.

Plaintiffs claim that numerous purchasers of the oxinol blend gasoline experienced poor engine performance and physical damage to fuel system components. Specifically, plaintiffs claim that the oxinol gasoline permitted an excess accumulation of alcohol and/or water which interfered with the efficiency of gasoline engines and, in certain vehicles, caused swelling of plastic or rubber components in the fuel delivery system and resulted in engine damage. The plaintiffs claim that the gasoline did not conform to ARCO's warranties about the product.

As the problems with the oxinol blend became known, the plaintiffs claim to have suffered a precipitous drop in the volume of their business and an attendant loss of profits. Specifically, plaintiffs point to the rise in sales from 1973 until 1982, when sales began to fall dramatically; allegedly due to defective oxinol blend gasoline.

In their complaint, plaintiffs allege three counts of Breach of Warranty, Breach of Implied Duty, Misrepresentation, and Exemplary Damages. They request damages for "lost profits, consequential and incidental damages."

1. We note that the plaintiffs have failed to append a copy of the agreements executed between the parties. Thus certain issues, such as whether the agreements constituted a contract of adhesion, are foreclosed from our consideration as we cannot make that determination without the relevant documents.

## DISCUSSION

The point at which we start our inquiry is the Uniform Commercial Code ("the U.C.C."), codified at 13 Pa.C.S. § 1101 *et seq.* Section 2714, entitled "Damages of buyer for breach in regard to accepted goods" is one of the governing provisions in the case before us,[2] and provides, in pertinent part:

> (b) Measure of damages for breach of warranty.—The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

> (c) Incidental and consequential damages.—In a proper case any incidental and consequential damages under section 2715 (relating to incidental and consequential damages of buyer) may also be recovered.

Section 2715 is entitled "Incidental and Consequential Damages of Buyer" and provides, in pertinent part:

> (a) Incidental damages.—Incidental damages resulting from the breach of the seller include:

> > (3) any other reasonable expenses incident to the delay or other breach.[3]

> (b) Consequential damages.—Consequential damages resulting from the breach of the seller include:

> > (1) any loss resulting from general or particular requirements and needs of which the seller at the time of

---

**2.** The plaintiffs claim they have accepted gasoline which allegedly does not conform to the warranty. Thus, we believe § 2714 is one of the governing provisions.

**3.** The incidental damage provision is aimed at reimbursing the buyer for expenses incurred in rightfully rejecting goods, or in connection with effecting cover. We have not quoted all the sections included in the subtitle of Incidental Damages. The courts below have not addressed the claim for incidental damages, nor have the parties to the litigation.

contracting had reason to know and which could not reasonably be prevented by cover or otherwise.[4]

Pursuant to the provisions of the U.C.C., plaintiffs are entitled to seek "general" damages, so-called, under section 2714(b), and consequential damages as provided by section 2714(c).

■■■ There has been substantial confusion in the courts and among litigants about what consequential damages actually are and what types of consequential damages are available in a breach of warranty case. Where a buyer in the business of reselling goods can prove that a breach by the seller has caused him to lose profitable resales, the buyer's lost profits constitute a form of consequential damages.[5] We now hold that in addition to general damages, there are three types of lost profit recoverable as consequential damages that may flow from a breach of warranty: (1) loss of primary profits; (2) loss of secondary profits; and (3) a loss of good will damages (or prospective damages, as they are sometimes termed).

In order to alleviate the confusion that has developed concerning the various damages, we use an example to help illustrate the different types.

■■■ General damages in the case of accepted goods (such as occurred here) are the actual difference in value between the goods as promised and the goods as received. Thus, suppose a buyer bought five hundred tires from a wholesaler that were to be delivered in good condition, and in that condition would be worth $2,500. The tires were delivered with holes in them which rendered them worthless. The buyer would be entitled to $2,500 from the seller—the difference between the value of the tires as warranted and the value of the tires as received; those would be the general damages.

---

4. Another section of the Consequential Damages section includes a provision addressing injury to person or property; a matter which is not before us.

5. *See, generally,* U.C.C. § 2715, comment 6 (1978).

Consequential damages are generally understood to be other damages which naturally and proximately flow from the breach and include three types of lost profit damages: (1) lost primary profits; (2) lost secondary profits; and (3) loss of prospective profits, also commonly referred to as good will damages.

■ Lost primary profits are the difference between what the buyer would have earned from reselling the goods in question had there been no breach and what was earned after the breach occurred. Thus, if the buyer of the tires proved that he would have resold the tires for $5,000, he would be able to claim an additional $2,500 for loss of tire profits; the difference between what he would have earned from the sale of the tires and what he actually did earn from the sale (or lack of sales) from the tires.

If the buyer of the tires also sold, for example, hubcaps with every set of tires, he would also suffer a loss of hubcap profits. These types of damages are what we term "loss of secondary profits."

■ If the buyer's regular customers were so disgruntled about the defective tires that they no longer frequented the buyer's business and began to patronize a competitor's business, the buyer would have suffered a "loss of good will" beyond the direct loss of profits from the nonconforming goods; his future business would be adversely affected as a result of the defective tires. Thus, good will damages refer to profits lost on future sales rather than on sales of the defective goods themselves.

While this example provides a simple framework to understand the different types of possible damages in a breach of warranty case, it does not encompass the myriad of circumstances in which a claim for damages can arise, nor does it specify which of these different damages have been allowed in Pennsylvania.

■ In addition to recognizing general damages under § 2714 of the Code, Pennsylvania allows consequential damages in the form of lost profits to be recovered. *See, e.g.,*

*Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968); *Delahanty v. First Pennsylvania Bank N.A.*, 318 Pa.Super. 90, 464 A.2d 1243 (1983); *Frank B. Bozzo, Inc. v. Electric Weld Division*, 283 Pa.Super. 35, 423 A.2d 702, *aff'd*, 495 Pa. 617, 435 A.2d 176 (1981). *See also National Controls Corporation v. National Semiconductor Corporation*, 833 F.2d 491 (3d Cir.1987) and *Kunststoffwerk Alfred Huber v. R.J. Dick, Inc.*, 621 F.2d 560 (3d Cir.1980).

Pennsylvania has, however, disallowed good will damages; finding them to be too speculative to permit recovery. In the cases disallowing good will damages, part of the reason we found them too speculative is that the damages were not contemplated by the parties at the time the contract was made.

In 1977, this court had occasion to re-examine sections 2714 and 2715 of the Uniform Commercial Code in the case of *R.I. Lampus Co. v. Neville Cement Products Corp.*, 474 Pa. 199, 378 A.2d 288 (1977). Before the *Lampus* case, we required the party seeking consequential damages in the form of lost profits to show that there were "special circumstances" indicating that such damages were actually contemplated by the parties at the time they entered into the agreement. This rule, termed the "tacit-agreement" test, "permit[ed] the plaintiff to recover damages arising from special circumstances only if 'the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, [such liability] when the contract was made.'" *R.I. Lampus Co.*, *supra*, 474 Pa. at 207, 378 A.2d at 291 (1977). (cites omitted) (brackets in original), quoting from J. White & R. Summers, *Uniform Commercial Code* (1972).

■ In *Lampus*, we overruled the restrictive "tacit-agreement" test and replaced it with the "reason to know" test; which requires that "[i]f a seller knows of a buyer's general or particular requirements and needs, that seller is liable for *the resulting consequential damages* whether or not that seller contemplated or agreed to such damages."

*Id.,* 474 Pa. at 209, 378 A.2d at 292 (1977) (emphasis supplied).[6] Thus, in order to obtain consequential damages, the plaintiff need only prove that the damages were reasonably foreseeable at the time the agreement was entered into.[7]

Turning to the case at hand, we must determine whether the plaintiffs have alleged sufficient facts to permit them to proceed with a claim for consequential damages.

We note initially that the standard of review for preliminary objections is a limited one. As we stated in *Vattimo v. Lower Bucks Hosp., Inc.,* 502 Pa. 241, 465 A.2d 1231, 1232–33 (1983):

All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.] *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960).

In this complaint, the plaintiffs have alleged, *inter alia:* that ARCO expressly warranted through its agreements, mailgrams and brochures that its oxinol gasoline was of high quality, better for the environment and would not damage new or older automobiles; that the oxinol gasoline was not merchantable because it damaged engines; that it was not fit for the ordinary purpose for which it was intended; that ARCO knew that the plaintiffs were relying on the skill of the defendants to select or furnish suitable gasoline; that ARCO's actions constituted a breach of ex-

6. *Lampus* is in accord with section 2–715 of the U.C.C., comment 2 (1978), which states; "[t]he 'tacit agreement' test for the recovery of consequential damages is rejected."

7. *Accord;* U.C.C. § 2–715, comment 3 (1978).

press warranties which resulted in harm to the plaintiffs in the form of lost profits, incidental and consequential damages.

Based on our standard of review as set forth above, we believe that the plaintiffs have set forth sufficient facts in their complaint to state a cause of action under the breach of warranty counts.

The plaintiffs seek lost profits, incidental and consequential damages.[8] The defendants and the lower courts, however, considered these damages to be lost good will. We believe that the lower courts and the defendants are in error in categorizing all the claimed damages as good will damages. We address separately the different types of damages claimed.

## LOSS OF PROFITS FOR GASOLINE SALES

The first claim the plaintiff makes for damages is for the profits lost from the sales of gasoline. The plaintiffs claim that the breach of warranty by the defendant concerning the gasoline caused the plaintiffs to lose sales during a three and one half year period while they received nonconforming gasoline from ARCO. In the case of *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), we permitted lost profits for cattle sales when the plaintiff showed that the defective feed caused harm to their cattle, causing the public to stop buying their cattle. The allegation here is similar. When the gasoline buying public discovered that the gasoline was defective, many stopped purchasing ARCO gasoline.

Employing the reasoning of *Kassab* and taking it one step further, we believe that the plaintiffs here are entitled to show that the gasoline buying community did not buy their gasoline from 1982 through 1985 because of the reasonable belief that the gasoline was defective and would harm their engines. The lost gasoline sales are comparable to the lost

---

**8.** The plaintiffs claim "lost profits, incidental and consequential damages." As we noted herein, however, "lost profits" are a type of consequential damage; not a separate category of damages.

cattle sales in *Kassab*. The distinction between the two cases is that the Kassabs had bought the feed all at one time and thus all their livestock was affected. The instant plaintiffs bought their gasoline in regular intervals and could only earn a profit on what they could sell per month. The defendant's argument—that the plaintiffs sold all the gasoline they bought—misses the point. While they may have sold every gallon, they sold significantly fewer gallons during the period that ARCO allegedly delivered nonconforming gasoline. Thus, during this period, the plaintiffs' lost sales were just as directly attributable to the defective gasoline as the lost profits were attributable to the defective tires in the example we used previously.[9]

Thus, if prior to the manufacture of defective gasoline the plaintiffs sold 100,000 gallons per month every month and then as a result of the defective gasoline, they sold only 60,000 gallons per month every month until ARCO discontinued that gasoline, then the plaintiffs have lost the profits they would have received on 40,000 gallons per month for the three year claimed period.[10] Lost profits are, in fact, the difference between what the plaintiff actually earned and what they would have earned had the defendant not committed the breach. Because the gasoline was allegedly not in conformance with the warranties, the plaintiffs may be entitled to lost profits for the gasoline on a breach of warranty theory. The lost gasoline sales are what we have termed "loss of primary profits," and they are recoverable pursuant to § 2715 of the U.C.C. upon proper proof.

■ We note, furthermore, that the remedy of cover was unavailable to the plaintiffs. Section 2715 of the

9. The current case, unlike the tire example, involves a requirements contract rather than a fixed quantity agreement. In a requirement contract, profits lost during the period of time in which the seller supplies nonconforming goods constitute lost primary profits. The Code does not require that the buyer prove he would have purchased the same amount as usually required, for § 2715 permits the buyer to mitigate his damages by "cover or otherwise." Thus the buyer need not buy his usual amount of goods and then be unable to sell them before he can claim a loss of profits.

10. The figures used are representational only and do not represent any claims made by the plaintiffs.

U.C.C. limits a plaintiff's ability to recover when he could have prevented such damage "by cover or otherwise". Pursuant to the code, cover is defined as the buyer's purchase of substitute goods at a commercially reasonable price. The buyer can recover from the seller the difference between the contract price and the cost of goods bought as cover. 13 Pa.C.S. § 2712, defining "cover" and damages recoverable, provides, in pertinent part:

(a) Right and manner of cover.—After a breach within section 2711 (relating to remedies of buyer in general; security interest of buyer in rejected goods) the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

The plaintiffs here, by their allegations, could not "cover;" they were contractually required to purchase all their gasoline from ARCO. In effect, they had to accept the allegedly nonconforming gasoline and had no possible way to avoid the attendant loss of profits. Thus, since they could not cover, the only remedy that was available to them was to file suit.[11]

Furthermore, we note that Section 1106 of the U.C.C. provides:

[t]he remedies provided by this title shall be *liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed* but neither consequential or special nor penal damages may be had except as specifically provided in this title or by other rule of law. (emphasis supplied).

The Code itself compels us to be liberal in our interpretation of the types of damages we permit. We would therefore allow the plaintiffs to proceed with their claims for lost

---

**11.** The comment to the Code for the section relating to cover states; 1. "[t]he definition of "cover ... envisages a series of contracts or sales, as well as a single contract or sale; goods not identical with those involved but commercially usable as reasonable substitutes under the circumstances...."

gasoline profits during the period ARCO supplied allegedly nonconforming gasoline.

## LOSS OF PROFITS FOR ITEMS OTHER THAN GASOLINE SALES

The plaintiffs allege that in addition to a loss of profits for sales of gasoline, they had a concomitant loss of sales for other items that they sold in their mini-marts during the period of time that ARCO supplied nonconforming gasoline. Their rationale is that when the number of customers buying gasoline decreased, so did the number of customers buying items at the mini-mart. In other words, related facets of their business suffered as a result of the defective gasoline. This type of injury is what we characterize as "loss of secondary profits;" meaning that the sales of other products suffered as a result of the breach of warranty. This court has not had an opportunity to address whether these types of damages are recoverable.

In the case before us, the essence of plaintiffs' allegations is that customers frequent the mini-marts because it is convenient to do so at the time they purchase gasoline. Customers of the mini-mart are foremost gasoline buying patrons; gasoline is their primary purchase and sundries are their incidental purchases. Here, the plaintiffs claim that the *primary product* sales so affected the incidental sales as to create a loss in other aspects of their business. It is reasonable to assume that if the gasoline sales dropped dramatically, there was a ripple effect on the mini-mart sales. Additionally, when a primary product does not conform to the warranty, we believe that it is foreseeable that there will be a loss of secondary profits. Thus, permitting these damages would correspond with the requirement of foreseeability as set forth in *Lampus, supra,* and the Code. It is much less foreseeable to assume there will be a loss of secondary profits when the nonconforming products are not the primary ones. We believe that unless it is a primary product that does not conform to the warranty, the causal

relationship between the breach and the loss is too attenuated to permit damages for the loss of secondary profits.[12]

We also find that the fact situation before us presents a further problem in that the plaintiffs were not able to mitigate the harm in any way by buying substitute goods or "cover." Thus, the plaintiffs' primary product was defective and they were unable to remedy the situation by buying gasoline from another supplier.

We find that the present case presents compelling reasons for permitting damages for loss of secondary profits. Henceforth, in a breach of warranty case, when a primary product of the plaintiff is alleged to be nonconforming and the plaintiff is unable to cover by purchasing substitute goods, we hold that upon proper proof, the plaintiff should be entitled to sue for loss of secondary profits.[13]

## LOSS OF GOOD WILL

Historically, Pennsylvania has disallowed recovery for loss of good will damages or prospective profits in breach of warranty cases. The cases generally relied upon for this proposition are *Michelin Tire Co. v. Schulz*, 295 Pa. 140, 145 A. 67 (1929); *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co. of America*, 396 Pa. 506, 153 A.2d 472 (1959); and *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968).

12. As with all cases involving breach of warranty, the plaintiff is charged with the burden of proving that the defendant's breach is the proximate cause of the harm suffered. Thus, in order to proceed with their case, the plaintiffs here must prove that the alleged nonconformance of the gasoline caused both their loss of gasoline sales as well as their loss of mini-mart sales. This requirement is an arduous one and we render no opinion as to whether the plaintiffs can meet this burden. However, we note that this is for the trial court, in its wisdom, to decide whether the plaintiffs have met the threshold of proof to submit the case to the factfinder.

13. What constitutes a "primary product" will be dependent on the facts of each case. However, we would define a "primary product" as an item upon which the aggrieved party relies for a substantial amount of its revenue. The plaintiff must show that without that product, his business would be severely incapacitated.

The defendant and the lower courts rely on these cases for the proposition that the plaintiffs claims are for "good will damages" and thus too speculative as a matter of law to permit recovery. While this analysis is seductive in its simplicity, it ignores the nuances of each of these cases and the effect *R.I. Lampus Co. v. Neville Cement Products Corp.*, has had on this area of law.

In fact, in the case of *Rubin & Sons, supra*, the court remarked "[i]ndeed if such were the holding [permitting good will damages], damages which the parties never contemplated would seem to be involved in every contract of sale." *Id.*, 396 Pa. at 513, 153 A.2d at 477.

With the advent of the *Lampus* "reason-to-know" test—which is a test of foreseeability—the holdings under each of these cases have much less precedential effect, since the *Lampus* test is much less restrictive than the tacit-agreement test.

Although the plaintiffs do not style their claim as one for good will damages, the Superior Court, the trial court, and the defendant have all characterized the claim for lost profits in this case as good will damages. What actually constitutes good will damages has caused much consternation to the courts and litigants. We in fact have serious doubts that the plaintiffs are even seeking good will damages. However, in order to determine that issue in the case before us, we must first discuss what good will damages are and whether they are allowable.

As one commentator aptly noted, "[l]oss of good will is a mercurial concept and, as such, is difficult to define. In a broad sense, it refers to a loss of future profits." [14] Other jurisdictions have considered loss of good will to be a loss of profits and reputation among customers.[15] Generally, good will refers to the reputation that businesses have built over the course of time that is reflected by the return of custom-

14. Anderson, *Incidental and Consequential Damages,* 7 J.L. & Com. 327, 420 (1987).
15. *Texsun Feed Yards, Inc. v. Ralston Purina Co.,* 447 F.2d 660 (5th Cir.1971).

ers to purchase goods and the attendant profits that accompanies such sales. Thus the phrase "good will damages" is coextensive with prospective profits and loss of business reputation.

 Secondly, we must decide when good will damages arise in a breach of warranty situation. Essentially, damage to good will in a case in which the seller supplies a quantity dictated by the buyer's requirements arises only *after* the seller has ceased providing nonconforming goods—or the buyer has purchased substitute goods. Damage to good will in this case would refer to the loss of business sales that occurred after the buyer was able to provide acceptable goods to his customers; it does not refer to the period of time during which he is forced to sell the nonconforming goods.

 Thirdly, we must address whether good will damages are too speculative to permit recovery, as we held in *Michelin, Rubin & Sons, supra,* and *Kassab, supra.* Although we disallowed good will damages in those cases, they are not recent. They were written in a time when business was conducted on a more simple basis, where market studies and economic forecasting were unexplored sciences.

We are now in an era in which computers, economic forecasting, sophisticated marketing studies and demographic studies are widely used and accepted. As such, we believe that the rationale for precluding prospective profits under the rubric of "too speculative" ignores the realities of the marketplace and the science of modern economics. We believe that claims for prospective profits should not be barred *ab initio.* Rather, plaintiffs should be given an opportunity to set forth and attempt to prove their damages.

Twenty years ago, the Third Circuit Court of Appeals noted in a case disallowing claims for prospective profits that damages once considered speculative may not be in the future:

This is not to say we approve the Pennsylvania view or believe it will be the Pennsylvania position in the future [prohibiting good will damages]. Considering the advances made in techniques of market analysis and the use of highly sophisticated computers it may be that lost profits of this nature are no more speculative than lost profits from the destruction of a factory or hotel, and perhaps Pennsylvania will reconsider the reason for its rule in a future case.

*Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1227 (1970).

We believe the time has come to reconsider that rule. In doing so, we find our position on recovery for good will damages (or prospective profits) to be out of step with modern day business practices and techniques, as well as the law of other jurisdictions.[16] As noted by Professor Anderson in his well-crafted article on incidental and consequential damages,

> [t]o date, only the Pennsylvania courts have categorically denied recovery for loss of goodwill under any circumstances, an issue which has been oft-litigated in Pennsylvania. If one removes the Pennsylvania cases from the count, a significant majority of the cases have allowed for the recovery of lost goodwill in proper circumstances.[17]

Furthermore, our rule has been repeatedly criticized by

**16.** Many state and federal courts now allow good will damages. *See, e.g., R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749 (10th Cir.1975); *Consolidated Data Terminals v. Applied Digital Data Systems, Inc.*, 708 F.2d 385 (9th Cir.1983); *Roundhouse v. Owens Illinois, Inc.* 604 F.2d 990 (6th Cir.1979); *Texsun Feed Yards, Inc. v. Ralston Purina Co.*, 447 F.2d 660 (5th Cir.1971); *Isenberg v. Lemon*, 84 Ariz. 340, 327 P.2d 1016 (1958); *Delano Growers' Cooperative Winery v. Supreme Wine Co.*, 393 Mass. 666, 473 N.E.2d 1066 (1985); *Hydraform Products Corp. v. American Steel & Aluminum Corp.*, 127 N.H. 187, 498 A.2d 339 (1985); *Adams v. J.I. Case Co.*, 125 Ill.App.2d 388, 261 N.E.2d 1 (1970); *Robert T. Donaldson, Inc. v. Aggregate Surfacing Corp.*, 47 A.D.2d 852, 366 N.Y.S.2d 194 (1975), *appeal dismissed*, 37 N.Y.2d 793, 375 N.Y.S.2d 106, 337 N.E.2d 612 (1975); *Sol–O–Lite Laminating Corp. v. Allen*, 223 Ore. 80, 353 P.2d 843 (1960).

**17.** Anderson, *Incidental and Consequential Damages*, 7 J.L. & Com. 327, 421 (1987).

other courts and commentators.[18] In reviewing our case law on the issue of prospective profits, we have not had a significant case come before us since *Kassab* was decided in 1968. Since that time, astronauts have walked on the moon, engineers have developed computers capable of amazing feats and biomedical engineers and physicians have made enormous strides in organ transplantation and replacement. It is evident that the world of 1990 is not the same world as it was in 1929 when the *Michelin* case was decided, nor even the same world as it was in 1968 when *Kassab* was decided., While these rapid technological developments have not been without their concomitant problems, they have made possible many things that were not possible before; including the calculation of prospective profits.[19]

**18.** *See, e.g., Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1227 (3d Cir.1970); Comment, *Loss of Goodwill and Business Reputation as Recoverable Elements of Damages Under Uniform Commercial Code § 2-715—The Pennsylvania Experience*, 75 Dick.L.Rev. 63, (1970); Peters, *Remedies for Breach of Contracts*, 73 Yale L.J. 199, 276-77 (1963).

**19.** Further curiosity is engendered by our extensive history of allowing claims for loss of prospective profits in breach of contract case. In *Wilson v. Wernwag*, 217 Pa. 82, 66 A. 242 (1907), this court said:
> An examination of the well-considered cases will show that prospective profits may be recovered for the breach of a contract whenever they are susceptible of proof. They have been rejected by the courts as damages only because of the failure to prove them with sufficient certainty and definitiveness. There can be no good reason why they should not be recovered when they are capable of definite estimation." *Id.*, at 94, 66 A., at 246.

*See also, Massachusetts Bonding & Insurance Co. v. Johnston & Harder, Inc.*, 343 Pa. 270, 22 A.2d 709 (1941); *Hahn v. Andrews*, 182 Pa.Super. 338, 126 A.2d 519 (1956); *Bolus v. United Penn Bank*, 363 Pa.Super. 247, 525 A.2d 1215 (1987).

In these cases, this court has recognized that although proof of prospective damages might be difficult, such difficulty should not operate as an absolute bar to the claim itself:
> compensation for breach of contract cannot be justly refused because proof of the exact amount of loss is not produced, for there is judicial recognition of the difficulty or even impossibility of the production of such proof. What the law does require in cases of this character is that the evidence shall with a fair degree of probability establish a basis for the assessment of damages. *Massachusetts Bonding & Insurance Co. v. Johnston & Harder, Inc.*, 343 Pa. 270, 280, 22 A.2d 709, 714 (1941).

The problem of proof in these breach of contract cases is really no different from the problems of proof in breach of warranty cases. In

For these reasons, we overrule *Michelin, supra, Rubin & Sons, Inc., supra,* and *Kassab, supra,* to the extent they prohibit a plaintiff from alleging a claim for damage to good will as a matter of law.

Inextricably entwined with the issue of speculation is the difficulty in proving the damages are causally related to the breach. As we stated earlier, difficulty in proving causation should not operate as a bar to permitting plaintiffs to claim the damages. Furthermore, we note that pursuant to our case law and the Uniform Commercial Code, damages need not be proved with mathematical certainty. As long as the plaintiffs can provide a reasonable basis from which the jury can calculate damages, they will be permitted to pursue their case.

Thus, we now hold that plaintiffs should be entitled to try to prove good will damages; provided they are able to introduce sufficient evidence (1) to establish that the such profits were causally related to a breach of warranty and (2) to provide the trier of fact with a reasonable basis from which to calculate damages.[20]

Turning to the facts of this case, we note that the plaintiffs have made no claim for good will damages, since none was incurred; ARCO having cured the breach by stopping the supply of the nonconforming gasoline. The damages claimed are only for the period of time that the

our attempt to craft law that is internally consistent as well as historically consistent, we must strive to reconcile differences as they become apparent. As such, we see no legitimate reason to prohibit prospective damages in breach of warranty cases when we never have in breach of contract cases.

**20.** There are a number of different ways that damages may be removed from the realm of speculation and be submitted to the jury with a rational basis from which the amount can be inferred. As long as the method of proof provides the jury with "a reasonable basis" for calculating damages, the issue should be submitted to the trier of fact. This is the approach taken by most jurisdictions. See, *e.g., Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); *Macdonald v. Winfield Corp.,* 93 F.Supp. 153 (E.D.Pa.1950); *Schatz v. Abbott Labs. Inc.,* 51 Ill.2d 143, 281 N.E.2d 323 (1972); *Hawkins v. Jamrog,* 277 Mass. 540, 179 N.E. 224 (1931); *Apex Metal Stamping Co. v. Alexander & Sawyer, Inc.,* 48 N.J.Super. 476, 138 A.2d 568 (1958).

plaintiffs were forced to purchase the gasoline with oxinol. Thus, we reverse the decision of the lower courts in holding that the plaintiffs' claim was for good will damages.

## CONCLUSION

We now hold that there are three types of lost profits recoverable as consequential damages available under § 2714 and § 2715 of the Uniform Commercial Code: (1) loss of primary profits; (2) loss of secondary profits; and (3) good will damages, defined as a loss of prospective profits or business reputation. While this categorization of damages represents a new direction for the court, we believe it is the better direction.

As a final note, we do not find that this case should be decided on tort principles, but on warranty principles. The relationship between the parties is of a contractual nature and should be decided on contractual principles. For that reason, we uphold the decision of the court below dismissing the tort claims. Additionally, we do not believe that our case law or the Uniform Commercial Code authorizes a legitimate claim for exemplary damages and thus affirm the lower court's dismissal of such claim. Accordingly, we reverse the decision of the lower courts with respect to the breach of warranty claims and remand the case for proceedings consistent with the opinion.

It is so ordered.

FLAHERTY, J., filed a concurring and dissenting opinion.

NIX, C.J., joins in this concurring and dissenting opinion.

FLAHERTY, Justice, concurring and dissenting.

I join in the majority opinion insofar as it holds that loss of primary and secondary profits are recoverable consequential damages under § 2714 and § 2715 the Uniform Commercial Code, and insofar as it holds that tort claims

and claims for exemplary damages were properly dismissed by the court below. The majority's rationale upon those issues is most cogent.

I dissent, however, with respect to the majority's purported holding that good will damages are recoverable. Recovery of good will damages, meaning loss of prospective profits and business reputation, is not at issue in this case. The majority states that the plaintiffs did not make a claim for good will damages. Where no claim for such damages has been made, it is jurisprudentially unsound for this Court to raise and decide the issue. While the discussion and what might be seen as a purported decision on this point is readily dismissed as dicta, and I am inclined to disagree with it, it would be preferable, to say the least, that the issue not be addressed until we are presented with a case where good will damages are at issue.

NIX, C.J., joins this concurring and dissenting opinion.