**3000 B.C. v. Bowman Properties Ltd.**

*Nancy D. Wasser,* for plaintiff.
*Dana S. Plon* and *Peter A. Lesser,* for defendant.

BERNSTEIN, *J.,* September 12, 2008—Defendant, Bowman Properties, appeals from the court's denial of post-trial motions following a two-day non-jury trial, which resulted in a finding for plaintiff 3000 B.C. and 3000 B.C. Inc.

On February 21, 2006, plaintiff 3000 B.C. filed a complaint alleging constructive eviction. On March 23, 2006, defendant Bowman Properties answered plaintiff's complaint with new matter and a counterclaim. On December 6, 2007, a non-jury trial began. Trial lasted for two days and on March 19, 2008, the court returned a finding for the plaintiff in the amount of $236,338.45. On April 8, 2008, defendant filed a motion for post-trial relief. Plaintiff responded on April 11, 2008. Oral argument on defendant's motion for post-trial relief was heard. On August 19, 2008, the court denied defendant's motion for post-trial relief. From this order, defendant timely appealed.

Plaintiff, 3000 B.C., is a professional spa, offering a variety of therapeutic treatments including massage and facials. The success of their business relied on their clients' happiness and the ability to provide a serene and tranquil environment. This objective was irrevocably destroyed at 3000 B.C., when their Indian flute music was overwhelmed by hammering, sawing, colorful language of construction workers, and by the joyful sounds

of gleeful children playing while awaiting their turn at the Hair Cuttery occupying the apartment above. Defendant Bowman Properties understood that 3000 B.C. required a tranquil environment to run a spa because they had leased the property to 3000 B.C. for 12 years.

A covenant of quiet enjoyment is implied into every lease in the Commonwealth of Pennsylvania.[1] This covenant exists between the landlord and the tenant and is breached when a tenant's possession is impaired by acts of the lessor.[2] "There is an implied covenant for the quiet enjoyment of the demised premises, and it is settled in this state that any . . . act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the landlord is liable in damages to the tenant."[3] A breach of the covenant can be demonstrated through constructive eviction, if the tenant can establish that the utility of the premises has been substantially and fundamentally impaired. The manner in which defendant leased to the Hair Cuttery, violated the covenant of quiet enjoyment.

In the case of a breach of a constructive eviction, damages can be awarded for all losses which can be proven. A lessee may recover "for all losses which he can prove he has actually sustained, or which he will necessarily sustain, under the circumstances, as a result of the unlaw-

1. *Raker v. G.C. Murphy Co.,* 358 Pa. 339, 58 A.2d 18 (1948).

2. *No. 14 Coal Co. v. Pennsylvania Coal Co.,* 416 Pa. 218, 206 A.2d 57 (1965); *Einfield v. Shermer,* 56 Pa. Super. 4 (1914).

3. Kelly v. Miller. 249 Pa. 314, 316-17, 94 A. 1055, 1056 (1915).

ful eviction. The measure of damages has been liberally extended to include . . . profits of the business."[4]

The damages recoverable by a constructively evicted individual tenant are not applicable to the constructive eviction of a business. There is no Pennsylvania appellate decision precisely defining the measure of damages for a commercial constructive eviction. The only reported decision is the decision of Judge C. Darnell Jones[5] in *Cafe Parissa Inc. v. 1601 Associates.*[6] In that matter, Judge Jones said:

"[Plaintiff] has produced evidence that it incurred damages, including: (1) loss of possession and use of leasehold improvements and restaurant equipment; (2) expenditures made immediately prior to construction for perishable food and restaurant supplies; (3) expenses incurred with respect to maintaining the restaurant's staff in anticipation of reopening the restaurant; (4) inspection and cleaning incurred as a result of the construction; (5) unreimbursed November rent; and (6) legal fees."[7]

Few appellate decisions across the country have defined the proper measure of damages for constructive eviction in the commercial context. In *John Munich Meat Co. v. Gartenberg,*[8] the Illinois appellate court cited 49

---

4. *Pollock v. Morelli,* 245 Pa. Super. 388, 397, 369 A.2d 458, 462 (1976) (quoting *Minnich v. Kauffman,* 265 Pa. 321, 323, 108 A. 597, 598 (1919)).

5. Now President Judge Jones.

6. No. 4272, 2004 Phila. C.C.P. Lexis 10 (June 30, 2004), *aff'd,* 883 A.2d 684 (Pa. Super. 2005).

7. *Id.* at 16.

8. 366 N.E.2d 617 (Ill. App. 1977).

Am.Jur.2d Landlord and Tenant §324 (1970) as the law of Illinois:

"In addition to the values of the unexpired term and any direct and reasonably certain lost profits, the tenant may recover compensation for any other loss which results to him as a direct and natural consequence of the landlord's wrongful act, and which is not attributable to his own fault or want of care."[9]

The court finds that 49 Am.Jur.2d Landlord and Tenant §499 (2007) correctly states the law of Pennsylvania for constructive eviction of a commercial property. 49 Am.Jur.2d Landlord and Tenant §499 states,

"Lost profits may be recovered by a tenant for a breach of the covenant of quiet enjoyment by the landlord when they may be ascertained with reasonable certainty, . . . Thus, where, in the making of a lease, the parties contemplate that the use of the premises will result in a profit for the lessee . . . in assessing the damages for breach of the covenant of quiet enjoyment, consideration may be given for loss of those profits with reasonable certainty."

To recover lost profits, evidence must be introduced which forms a sufficient basis to estimate with reasonable certainty the total amount of the lost anticipated profits.[10]

---

9. 49 Am.Jur.2d Landlord and Tenant §324 (1970). See also, *Purvis v. Silva,* 381 P.2d 596 (Ariz. 1963) (stating that in constructive eviction cases, loss of profits from the destruction or interruption of an established business may be recovered if the amount of the actual loss is rendered reasonably certain by competent proof).

10. *Pollock,* 245 Pa. Super. at 397, 369 A.2d at 462.

As in any other contract action, the purpose of damages is to restore the injured party to the financial position it would have achieved had the contract been fulfilled. "The theory behind this philosophy is based on an attempt to make the non-breaching party whole again, not to provide him with a windfall."[11] The Pennsylvania Supreme Court has ruled that "[g]enerally speaking, the measure of damages applicable in a case of breach of contract is that the aggrieved party should be placed as nearly as possible in the same position he would have occupied had there been no breach."[12] This means that the injured party is "entitled to be reimbursed for the money actually paid out and for all reasonable and necessary expenses incurred on the faith of the contract."[13]

Accordingly, the court in this non-jury trial must determine what the financial position of 3000 B.C. would have been if constructive eviction had not occurred. This analysis begins with determining the length of time for which damages must be awarded. The lease from which the plaintiff was evicted expired on August 1, 2006. Although plaintiff argues that the 12-year rental history would allow the court to presume that the lease would have been repeatedly renewed and therefore calculate damages beyond the August 1, 2006 termination date, the court rejects that proposition. In Pennsylvania, a

---

11. *Bellefonte Area School District v. Lipner,* 81 Pa. Commw. 334, 339, 473 A.2d 741, 744 (1984). (footnote omitted)

12. *Harman v. Chambers,* 358 Pa. 516, 521, 57 A.2d 842, 845 (1948).

13. *Emerman v. Baldwin,* 186 Pa. Super. 561, 573, 142 A.2d 440, 447 (1958).

landlord can refuse to renew a lease for any good reason, for no reason, or any bad reason, as long as no constitutionally protected right is violated. Only speculation could determine the length of a new lease of the adjusted rent if the court were to calculate damages upon the leap of faith that the lease would be renewed. To determine damages upon these assumptions is to rely on speculation upon speculation. This speculation is impermissible.[14]

Plaintiff asks the court to find damages from plaintiff's historic sales trends which they claim demonstrated a 25 percent annual increase. Sales are not the proper measure of damages because sales utterly fail to account for expenses.

The proper measure of damages to restore the plaintiff to the same financial position it would have achieved if the lease had not been broken and the spa had not been constructively evicted are as follows:

(1) Increased rental payments;

(2) Lost profits;

(3) Expenses incurred in moving;

(4) Incidental expenses such as retraining of employees and gift certificates which will be redeemed in the future;

(5) Attorney's fees and finally;

(6) Loss of good will.

---

14. The court notes that in fact plaintiff's business has boomed at their new location, far exceeding anything that could reasonably have been planned, projected, or set as realistic goals.

For the first 11 years, 3000 B.C. lost money every day of business. The proprietor testified that despite tax returns which showed a $12,000 loss in 1995, the truth is that the company actually earned profits between $20,000 and $30,000. However, not one document presented at trial reflected any profit. The rent charged at the premises was $1,500 a month. When forced to move and reestablish their business, 3000 B.C. moved to a property upon which they pay $2,000 a week in rent. Despite a rent increase in excess of 500 percent from $18,000 per year to $104,000 per year, the proprietor testified that in the year 2007, the spa will make a profit. If that testimony is truthful, the only possible conclusion is that moving has generated at least $86,000 additional profits used to pay $86,000 increased rents.[15]

The proof presented as to damages is weak. There is however, one measure of damages which can be accurately measured. In 2004, 3000 B.C. reported a loss of $12,000 on its tax returns. In 2005, the year disturbances due to noise began, 3000 B.C. reported a loss of $155,000 on its tax returns. The court concludes that this difference accurately reflects the damage sustained as a result of the constructive eviction due to noise which escalated from modest beginnings in February 2005 to resulting in the forced evacuation in December 2005. Included in this loss are all attorney's fees paid in 2005, all moving expenses, and additional rent paid in 2005. Accordingly,

---

15. Although the proprietor would not characterize this change in fortune as "business booming," no other reasonable conclusion is possible.

those damages may not be awarded twice. Defendant has counterclaimed for the rent owed but unpaid in 2006. Defendant is owed this amount. These sums must be deducted from any award because this rent would have been a necessary expense if eviction had not occurred. Accordingly, the sum of $9,794.35 is deducted as a set-off from the recorded additional loss of $143,000 reported to the IRS.

In addition to the loss as reflected on tax returns, the court also awards attorney's fees as paid in 2006 and 2007 in the amount of $37,389.80. The court also awards as damages the full sum of credits upon future services which were given to customers whose spa treatments had been destroyed in the form of gift certificates. These certificates, which will be redeemed in the future, are in the amount of $6,564. The court awards nothing for retraining expenses. Retraining would have been necessary for any new facility whenever the lease terminated, and the testimony revealed a regular, significant need for retraining new staff because of a recurring problem with staff turnover. The claim for retraining expenses as presented makes no deduction for operating expenses which would have been incurred even if no eviction had occurred. No claim for additional retraining expenses has been proven.

Finally, plaintiff is entitled to an award for loss of good will. The Pennsylvania Supreme Court stated,

"Generally, good will refers to the reputation that businesses have built over the course of time that is reflected by the return of customers and the attendant profits that accompanies such sales. Thus the phrase 'good will dam-

ages' is coextensive with prospective profits and loss of business reputation."[16]

While historically our courts had deemed good will damages speculative and disallowed damages, in *AM/PM Franchise Association v. Atlantic Richfield Co.,* the Pennsylvania Supreme Court held that good will damages are recoverable.[17] The court reasoned,

"We are now in an era in which computers, economic forecasting, sophisticated marketing studies and demographic studies are widely used and accepted. As such, we believe that the rationale for precluding prospective profits under the rubric of 'too speculative' ignores the realities of the marketplace and the science of modern economics. We believe that claims for prospective profits should not be barred ab initio. Rather, plaintiffs should be given an opportunity to set forth and attempt to prove their damages."[18]

In order to recover for loss of good will, the plaintiff must establish that the loss was caused by the plaintiff's conduct and provide the trier of fact with a reasonable basis to calculate such loss.[19] Damages may be awarded for loss of business reputation even where, as here, an increase in profits has occurred.[20]

---

16. *AM/PM Franchise Association v. Atlantic Richfield Co.,* 526 Pa. 110, 127-28, 584 A.2d 915, 924 (1990).

17. *Id.* at 128, 584 A.2d at 924.

18. *Id.*

19. *Miller Oral Surgery Inc. v. Dinello,* 416 Pa. Super. 310, 319-20, 611 A.2d 915, 924 (1992).

20. *Stott v. Johnston,* 229 P.2d 348 (Cal. 1951). In *Stott,* plaintiff, a painter, brought an action for breach of warranty against defendant, a paint manufacturer, seeking, amongst other damages, damages for the

It is beyond dispute the disruption described in testimony necessarily causes consternation, hard feelings, ill will, and dismay among clients in a business which had been providing healthful therapeutic serenity to customers for over 12 years at the same location. That is what the law calls loss of good will. It is likewise beyond debate that the abrupt removal from a long established location in the community causes consternation and raises questions of stability among any loyal customer base. It is beyond question that whenever an established business abruptly removes a new location because of a dispute with a long-term landlord, questions are necessarily raised by rumor and innuendo throughout an otherwise loyal customer base, as to whether or not the dispute was the fault of an establishment, which had an otherwise good reputation. Customers must necessarily question whether rent had been paid, whether there was some other fault of the tenant's, which caused them to pack up in the middle of the night and abruptly move without prior notice. There can also be no question that attempting to provide spa services for a 10-month period under the difficult circumstances described in testimony results in a loss of good will.

The new location has turned out to be a gold mine. Clearly the business is in position to do better than ever.

---

loss of good will. From 1946 to 1947, the plaintiff used the defendant's paint. During that time period, plaintiff received numerous complaints from clients about the quality of the paint. However, the plaintiff's net profits increased each year the defendant's paint was used. The court awarded damages for loss of good will, reasoning that harm had occurred to the painter's reputation in the community and that plaintiff's gross profits should have been higher. *Id.* at 353-55.

This is a testament to the business' ability to overcome the loss of good will. An award of $47,190, which is equal to one-third the amount of the lost "profits" awarded herein is hereby entered for a loss of goods.

The court awards $236,233.45 in damages. For the reasons set forth above, the judgment of the court should be affirmed.