IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| VINCULUM, INC., | : | No. 74 MAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court dated November 29, |
| | : | 2021, at Nos. 2048 and 2127 EDA |
| v. | : | 2020 affirming the Judgment of the |
| | : | Bucks County Court of Common |
| | : | Pleas, at No. 2015-06333 dated |
| GOLI TECHNOLOGIES, LLC, | : | September 22, 2020. |
| | : | |
| Appellee | : | ARGUED: May 24, 2023 |

## OPINION

**JUSTICE BROBSON**                        **DECIDED: February 21, 2024**

In this discretionary matter, we must decide whether Appellant Vinculum, Inc. (Vinculum) is entitled to recover attorney fees and lost-profit damages purportedly extending beyond a one-year, non-compete period that flowed from Goli Technologies, LLC's (Goli LLC) breach of a consulting agreement (Consulting Agreement). After a bench trial, the Court of Common Pleas of Bucks County (trial court) rejected Vinculum's attempts to obtain both attorney fees and lost-profit damages, reasoning that attorney fees were inappropriate based on the nature of the case and that Vinculum was not entitled to damages beyond the scope of the one-year, non-compete period set forth in the Consulting Agreement. The Superior Court affirmed the trial court's decision, agreeing with its rationale on both issues.

For the reasons that follow, we reverse the Superior Court's decision affirming the trial court's denial of attorney fees and remand to the Superior Court with instructions to vacate the trial court's judgment and remand to the trial court for a hearing solely on the

issue of attorney fees. At the hearing, the trial court should provide Vinculum with the opportunity to introduce evidence of the attorney fees that it incurred as a consequence of Goli LLC's breach of the Consulting Agreement. The trial court may consider the reasonableness of the amount of the attorney fees sought in light of the specific facts of this case but must render some award in Vinculum's favor. As to lost-profit damages incurred beyond the one-year, non-compete period set forth in the Consulting Agreement, we conclude that the Superior Court erred insofar as it imposed an absolute bar on the award of damages incurred after the non-compete period expired. Nonetheless, because we also conclude that Vinculum did not establish at trial that it suffered lost-profit damages extending beyond the non-compete period, we affirm the Superior Court's decision to affirm the trial court's denial of lost-profit damages on alternative grounds.

## I. BACKGROUND

### A. Factual History

Vinculum and Goli LLC are internet technology (IT) staffing firms. Their expertise is locating computer software professionals and placing those individuals as consultants or employees at private companies or government agencies. The Pennsylvania Department of Transportation (PennDOT) hires consultants through staffing firms like Vinculum and Goli LLC. Throughout this process, PennDOT utilizes a Management Service Provider (MSP), which is an independent company that operates on behalf of PennDOT and the Commonwealth in an administrative role to aid with, *inter alia*, the hiring, management, and payment of consultants. Therefore, under the Commonwealth's and PennDOT's model, IT consultants are placed at PennDOT by companies like Vinculum and Goli LLC through an MSP. The Commonwealth pays the MSP for the consultant's services, and the MSP pays the staffing firm, who retains a portion of the

consultant's salary (somewhere between 0 and 10 percent) and then remits the remainder of the payment to the consultant.[1]  (*See* Reproduced Record (R.R.) at 513-21.)

Nagavardha Goli (Mr. Goli) is a software architect and a co-owner of Goli LLC.[2] (*Id.* at 512-13.)  Beginning roughly around 2007, Mr. Goli worked for IntelliSoft, which is an IT placement company similar to Goli LLC and Vinculum.  (*Id.* at 524.)  IntelliSoft placed Mr. Goli at various companies that required IT services.  (*Id.* at 524-27.)  In 2012, Mr. Goli learned from a former colleague who was working at PennDOT that there was an open position at PennDOT that suited Mr. Goli's skills.  (*Id.* at 531-32.)  IntelliSoft, therefore, contracted with Vinculum to place Mr. Goli at PennDOT.  (*Id.* at 531.)  Mr. Goli was aware that IntelliSoft placed Mr. Goli at PennDOT through Vinculum, but Mr. Goli had little, if any, interaction with Vinculum at that time.  (*Id.* at 652.)  In 2012 and 2013, while working at PennDOT through IntelliSoft and Vinculum, Mr. Goli formed Goli LLC, registered Goli LLC with PennDOT's MSP as a prospective supplier/vendor, and attempted to place consultants at PennDOT through Goli LLC.  (*Id.* at 535, 544.)  Mr. Goli then received his Permanent Resident Card (green card) and left IntelliSoft in order to place himself at PennDOT directly through Goli LLC.[3]  (*Id.* at 531, 534-35, 652.)

After Goli LLC approached PennDOT's MSP with the offer to place Mr. Goli at PennDOT directly, however, PennDOT's MSP informed Goli LLC that it would have to contract with PennDOT through Vinculum because Mr. Goli had an existing/prior contract

---

[1] This process may vary among government agencies, private companies, and MSPs. The testimony at the bench trial in this matter, however, established that this was the relevant process for PennDOT, Vinculum, and Goli LLC.

[2] Mr. Goli's wife is the other co-owner of Goli LLC.  (R.R. at 512-13.)

[3] Mr. Goli's immigration status prevented him from contracting with PennDOT's MSP directly prior to obtaining his green card.  (R.R. at 533, 599.)

with Vinculum.[4]  (*Id*. at 534-35, 652-53, 665.)  As such, in December 2014, Goli LLC entered into the Consulting Agreement with Vinculum.  The Consulting Agreement provided that Goli LLC would "furnish technical contract personnel . . . to work on an hourly basis to Vinculum on behalf of Vinculum's Client."  (*Id.* at 11.)  The Consulting Agreement defined Vinculum's Client as the MSP/PennDOT and the technical contract personnel as Mr. Goli.  (*Id.* at 15.)  Put differently, the Consulting Agreement established that Goli LLC would contract through both Vinculum and the MSP to place Mr. Goli at PennDOT as a consultant to perform IT services.  The Consulting Agreement contained a non-solicitation and non-competition provision:

> 10. SOLICITATION AND NON-COMPETITION:  *[Goli LLC] and [Mr. Goli] agree not to solicit or conduct business at [the MSP/PennDOT] for a period of one (1) year from termination of this contract.*  Violation of this covenant will result in legal action to prohibit such solicitation and[/]or conducting of business.  The stipulations in this paragraph will survive the termination of this [A]greement.
>
> [Goli LLC] agrees that [the MSP/PennDOT] . . . or any client introduced by Vinculum to [Goli LLC] or [Mr. Goli] is a client of Vinculum.  *Once the name of the Client[—i.e., the MSP/PennDOT—]is revealed to [Goli LLC], and for a period of one (1) year thereafter, whether or not the services of [Goli LLC] are engaged by Vinculum, it shall not compete with Vinculum in any manner, either directly or indirectly, through any other vendor or company, whether for compensation or otherwise, or assist any other person or entity to compete with Vinculum with [the MSP/PennDOT] or any other [c]lient so revealed to [Goli LLC] with which Vinculum does business.*
>
> Should [Goli LLC] breach any of the covenants of solicitation and noncompetition, Vinculum shall have the right to immediately terminate this [A]greement and to seek legal and/or equitable relief, including injunctive relief against [Goli LLC].  [Goli LLC] understands and acknowledges that a breach of this covenant would cause substantial harm to Vinculum, which would be difficult to calculate.  *Therefore, as liquidated damages, and not a penalty, [Goli LLC] agrees to pay Vinculum as decided by a court of [l]aw*

---

[4] The timing concerning Mr. Goli's departure from IntelliSoft and his discussion with PennDOT's MSP regarding the direct placement of Mr. Goli at PennDOT is somewhat unclear from the record.  In any case, there is no dispute that PennDOT's MSP rejected Goli LLC's offer to place Mr. Goli at PennDOT directly due to Mr. Goli's contract with IntelliSoft and Vinculum.

*for each violation in addition to all damages, costs, including court costs and reasonable attorney fees incurred by Vinculum in enforcing the provisions of this Agreement. [Goli LLC] further agrees and authorizes Vinculum to withhold payment up to the damages incurred in case of any violation by [Goli LLC] or [Mr. Goli]. It is the intention of the parties that if any court construes any of these covenants or any portion thereof to be illegal, void or unenforceable because of its duration or scope, such court shall reduce the duration or scope of the covenant or provision, and [in] its reduced form, the covenant or provision shall be enforced.*

[Goli LLC] agrees that [Mr. Goli] will represent only Vinculum and [Mr. Goli] will not disclose [Goli LLC's] company name [or] pay rate to the [MSP/PennDOT] and any other consultant per this clause.

(*Id.* at 12-13; Consulting Agreement ¶ 10 (emphasis added).)

In 2015, while the Consulting Agreement was in effect, Goli LLC attempted to place several consultants at PennDOT directly through PennDOT's MSP—*i.e.*, by removing Vinculum from the chain of contracting.[5] (R.R. at 542-43.) Goli LLC was successful in placing an individual named Gayam at PennDOT, but Gayam left PennDOT after approximately 3 months of work. (*Id.*) Goli LLC also attempted to place an individual named Toby Peters at PennDOT, but Vinculum learned of Goli LLC's actions and objected. (*Id.*) Goli LLC, therefore, abandoned its efforts.[6] (*Id.* at 543-44.) At the end of 2015, PennDOT retained a new MSP. (*Id.* at 546, 665.) Mr. Goli approached the new MSP, again seeking to have Goli LLC contract directly with the MSP to place Mr. Goli at PennDOT. (*Id.*) The new MSP agreed. (*Id.* at 665-66.) Thus, in December 2015, Goli LLC informed Vinculum that it was terminating the Consulting Agreement. (*Id.* at 545.) In January 2016, Goli LLC contracted directly with PennDOT through its new MSP and placed Mr. Goli at PennDOT to continue his work in IT services. (*Id.*

---

[5] Notably, unlike Mr. Goli, the consultants Goli LLC attempted to place at PennDOT did not have existing/prior contracts with the MSP and PennDOT through Vinculum, and, therefore, Goli LLC was permitted to place the consultants directly at PennDOT.

[6] Vinculum ultimately placed Toby Peters at PennDOT in the position that Goli LLC located. (R.R. at 663-64.)

at 546, 665-66.) Then, in September 2016, Goli LLC placed another consultant, S.A., at PennDOT directly through the MSP. (*Id*. at 552.) Due to Goli LLC's actions in this regard, which Vinculum perceived to be breaches of the Consulting Agreement's non-compete provision, Vinculum withheld payment to Goli LLC on two invoices for services that Mr. Goli performed at PennDOT while he was placed there through Vinculum.

## B. Trial Court Proceedings

In September 2015, while Goli LLC was continuing to place and/or attempting to place consultants directly at PennDOT, Vinculum initiated this action against Goli LLC. In an amended complaint filed on December 23, 2015, Vinculum set forth a cause of action against Goli LLC for breach of contract, wherein it alleged that Goli LLC breached the one-year, non-compete provision set forth in the Consulting Agreement "by placing, or attempting to place, [Gayam and Toby Peters in positions] directly with . . . PennDOT." (*Id.* at 5.) In support thereof, Vinculum alleged that the Consulting Agreement was valid and enforceable and that Goli LLC's breach of the Consulting Agreement caused Vinculum to sustain "damages in an amount equal to the revenue generated from the placement of the consultants" at PennDOT. (*Id*. at 6.) Further, to the extent that those consultants were still working at PennDOT, Vinculum insisted that its damages were "ongoing." (*Id*.) Consequently, Vinculum requested damages in an amount "in excess of $50,000.00 together with legal interest, contractual attorney[] fees, taxable costs, and such other relief as warranted by law or equity or as deemed appropriate" by the trial court. (*Id*.) In addition to monetary damages, Vinculum sought injunctive relief to prevent Goli LLC from placing Mr. Goli in his former position at PennDOT directly through its MSP. (*Id*. at 6-7.) Vinculum alleged that, if Mr. Goli was placed at PennDOT through Goli LLC, Vinculum would suffer "unquantifiable" damages because Mr. Goli would continue to work

for PennDOT and Goli LLC's breach of the Consulting Agreement would motivate Vinculum's other vendors to similarly breach their contracts. (*Id*. at 7.)

In response, Goli LLC filed an answer with new matter, wherein Goli LLC admitted that Vinculum and Goli LLC had entered into the Consulting Agreement but denied that Goli LLC's actions constituted a breach of the Consulting Agreement because, in Goli LLC's view, the Consulting Agreement and, more specifically, the non-compete provision, was not enforceable. (*Id*. at 63.) Goli LLC further asserted that Vinculum had not suffered any legally cognizable damages as a result of its alleged breach of the Consulting Agreement. (*Id*.) In support of its position that the Consulting Agreement was illegal and unenforceable, Goli LLC alleged that Vinculum did not have a legitimate business interest—*i.e.*, a protectable customer relationship status—with PennDOT, and, therefore, the non-compete provision constituted an illegal restraint of trade. (*See id.* at 66.) Specifically, Goli LLC asserted that it was aware of the identity of PennDOT and its MSP prior to contracting with Vinculum; Goli LLC registered with PennDOT's MSP in 2013 as a prospective supplier prior to entering into the Consulting Agreement with Vinculum; Goli LLC participated in a competitive bid process involving hundreds of suppliers utilizing publicly available information when it placed Gayam and attempted to place Toby Peters at PennDOT; and that, despite locating Toby Peters and identifying that he had the requisite skills that PennDOT needed, Goli LLC willingly allowed Vinculum to place Toby Peters at PennDOT after Vinculum objected to Goli LLC doing so. (*Id*. at 65-66.) Sometime thereafter, Goli LLC amended its answer with new matter to include counterclaims against Vinculum for breach of contract and quantum meruit. (*Id*. at 97-98.) Through those counterclaims, Goli LLC sought damages from Vinculum in the amount of $42,525, which represented the amount that Vinculum owed to Goli LLC on the unpaid

invoices for the work that Mr. Goli had performed at PennDOT during the time that he was placed at PennDOT by Vinculum pursuant to the Consulting Agreement. (*Id*.)

Vinculum also filed a motion for preliminary injunctive relief, wherein it contended that Goli LLC's breach of the one-year, non-compete provision set forth in the Consulting Agreement "ha[d] caused Vinculum to lose its market advantage with respect to the staffing of IT consulting positions with PennDOT." (*Id*. at 30.) As a result, Vinculum sought an order enjoining Goli LLC from contracting with PennDOT for the placement of Mr. Goli prior to the expiration of the non-compete period. (*Id*. at 32.) The trial court conducted a hearing on Vinculum's motion, after which the trial court denied Vinculum's requested relief, purportedly on the basis that if Goli LLC breached the Consulting Agreement Vinculum's damages would be calculable. (*See id.* at 22, 89, 554.)

In July 2020, after some delay in the litigation,[7] the matter ultimately proceeded to a bench trial, at which Mr. Goli and Vinculum's partial owner, Kailash Kalantri (Mr. Kalantri), testified in support of their respective positions set forth above concerning the validity of the Consulting Agreement and Goli LLC's purported breach thereof. Their testimony was extensive, but only several specific portions of their testimony, along with exchanges between the parties' counsel and the trial court, are relevant to this appeal. First, Mr. Goli conceded on cross-examination that Goli LLC successfully placed Mr. Goli and S.A. at PennDOT in 2016 while the Consulting Agreement's one-year, non-compete provision was active and that Goli LLC earned approximately $32,000 from doing so. (*Id*. at 546, 552, 560, 674-75.) Second, Vinculum's counsel attempted to question Mr. Goli on several occasions concerning Goli LLC's placement of additional consultants

---

[7] The record suggests that the matter simply remained stagnant for several years until, on November 28, 2017, the trial court issued a preliminary termination order. (R.R. at 1408.) In response, Vinculum filed a request for a status hearing, after which the trial court issued an updated case management order. (*Id.* at 1410, 1416.)

at PennDOT *after* the expiration of the non-compete period. (*See, e.g., id.* at 553-56.) In response to objections from Goli LLC's counsel, Vinculum's counsel explained to the trial court that Vinculum was attempting to ascertain Goli LLC's profits following the end of the non-compete period to demonstrate that, by breaching the Consulting Agreement, Goli LLC unfairly managed to gain a leg-up or head start in the industry that put Vinculum at a disadvantage and thereby caused Vinculum to sustain additional damages. (*Id.*) The trial court, however, generally sustained Goli LLC's objections to that line of questioning as outside the scope of the non-compete provision. (*Id.*) Third, in his direct testimony, Mr. Goli explained that his hourly rate while working at PennDOT through Vinculum was $150 minus Vinculum's fee of $15 per hour and that Goli LLC submitted two separate invoices to Vinculum for Mr. Goli's services totaling $42,525 that remained unpaid at the time of trial. (*Id.* at 668-69.) Mr. Kalantri corroborated Mr. Goli's testimony regarding those unpaid invoices on cross-examination. (*Id.* at 628-31.) Lastly, Vinculum's counsel raised the issue of attorney fees:

> [Vinculum's counsel]: Finally, since the case includes a contractual claim for attorney[] fees, I do have legal invoices and would be prepared to testify to their authenticity and relevance.
>
> . . . I believe [that Goli LLC's counsel] has an objection to the presentation of them.
>
> I'm also willing to table this until it's even decided if [Vinculum is] the prevailing party.
>
> THE COURT: I think that's the appropriate thing to do. We will reserve the issue of attorney[] fees for [Vinculum] to determine first whether [Vinculum] is a prevailing party.
>
> [Vinculum's counsel]: Fair enough. [Vinculum] rests.

(*Id.* at 634-35.)

At the end of trial, the trial court concluded from the bench that the Consulting Agreement was enforceable and that Vinculum was entitled to damages in "the amount [it] would have received had Mr. Goli and . . . S.A. been employed for a one-year period"

at PennDOT through Vinculum rather than Goli LLC. (*Id*. at 720-21.) In so doing, the trial court reiterated its disagreement with Vinculum's position that Goli LLC's breach of the Consulting Agreement somehow put Vinculum at a competitive disadvantage that entitled Vinculum to additional damages relating to the profits that Goli LLC earned after the one-year, non-compete period set forth in the Consulting Agreement expired. (*Id*. at 722-23.) As such, the trial court calculated Vinculum's actual damages as $32,145, basing that calculation on Mr. Goli's testimony concerning the work that he and S.A. performed at PennDOT during the non-compete period. (*Id*. at 721.)

Nonetheless, the trial court agreed with Goli LLC that it was entitled to receive $42,525 as damages on its counterclaims because Vinculum failed to pay the invoices that Goli LLC submitted to Vinculum relative to the services that Mr. Goli performed at PennDOT while he was placed there through Vinculum. (*Id*.) Consequently, the trial court entered a net verdict in Goli LLC's favor in the amount of $10,380. (*Id*.) Finally, without providing Vinculum an opportunity to present evidence regarding its attorney fees, the trial court concluded that it would not award attorney fees to either party: "Based on all of the provisions [of the Consulting Agreement] and all of the findings I've made, I don't find that attorney[] fees are appropriate and I'm not awarding attorney[] fees to either side." (*Id*. at 723.) Both Vinculum and Goli LLC filed post-trial motions, which the trial court denied. (*Id*. at 473.) Thereafter, the trial court entered judgment in favor of Goli LLC in the amount of $10,380. (*Id*. at 473-75.)

Vinculum appealed the trial court's evidentiary rulings and determinations concerning, *inter alia*, attorney fees and lost-profit damages beyond the scope of the one-year, non-compete period set forth in the Consulting Agreement to the Superior Court. The trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(a). As to attorney fees, the trial court reasoned:

> This [c]ourt did not err by finding that Vinculum proved the elements of its claim for breach of contract and refusing to enforce the provision for nondiscretionary attorney[] fees. The standard of review of awards of attorney[] fees has long been established. "Whether to award attorney[] fees and costs incurred in bringing an action is within the discretion of the trial court, and [the appellate court] will not reverse a trial court's decision on the matter in the absence of an abuse of discretion." *Regis Ins. Co. v. Wood*, 852 A.2d 347, 349-[]50 (Pa. Super. . . . 2004)[] (citing *First Pa. v. Nat'l Union*, 580 A.2d 799, [803] (Pa. Super. . . . 1990)). Vinculum argues the provision awarding attorney[] fees in the Consulting Agreement was nondiscretionary. However, the Pennsylvania Supreme Court has held that "courts may consider reasonableness when making a counsel fee award, regardless of the precise verbiage of the document authorizing such award." *Law [Offs.] of Justin R. Lewis, [PLLC] v. Diven*, 18 A.3d 1223, 1224 (Pa. Super. . . . 2011) [(Bowes, J., dissenting)] (citing *McMullen v. Kutz*, 985 A.2d 769, 776-[]77 (Pa. 2009)[] ("[W]e join the majority of our sister states in finding that parties may contract to provide for the breaching party to pay the attorney fees of the prevailing party in a breach of contract case, but that the trial court may consider whether the fees claimed to have been incurred are reasonable[] and to reduce the fees claimed if appropriate.")[)]. Based on the provisions of the Consulting Agreement and the findings of [this c]ourt, attorney[] fees were neither appropriate nor reasonable to award here.

(Trial Ct. Rule 1925(a) Op. at 5-6 (footnote omitted) (one alteration in original).) In other words, the trial court concluded that, because it was empowered to engage in a reasonableness inquiry of Vinculum's claimed attorney fees, it was permitted to disregard the plain language of the Consulting Agreement and deny attorney fees entirely because awarding attorney fees to either party was unreasonable.[8] The trial court also defended its decision to reject Vinculum's attempts to prove lost-profit damages extending beyond the non-compete period:

> This Court did not abuse its discretion by sustaining [Goli LLC's] objections to questions at trial concerning [Goli LLC's] profits beyond one-year post-breach. The restrictive covenant in the Consulting Agreement was for a period of one year, and[,] therefore[,] Vinculum's damages were limited to a period of one year.

---

[8] As discussed by the trial court and explained in more detail below, this Court's decision in *McMullen* established that a trial court may consider whether contractually mandated attorney fees are reasonable and may reduce those fees where appropriate. *McMullen*, 985 A.2d at 775-77.

(*Id.* at 9.)

## C. Superior Court Proceedings

### i. Majority Opinion

The Superior Court affirmed in a divided, non-precedential decision. *Vinculum, Inc. v. Goli Techs., LLC* (Pa. Super., Nos. 2048 & 2127 EDA 2020, filed Nov. 29, 2021). Before the Superior Court,[9] Vinculum contended that the trial court erred by refusing to enforce the Consulting Agreement's nondiscretionary attorney fee provision against Goli LLC due to Goli LLC's breach. Vinculum insisted that it was not within the trial court's authority to "modify the terms of [the Consulting Agreement] under the guise of interpretation[,] because [the Consulting Agreement's] written terms are the best indication of the parties' intent." (Vinculum's Superior Ct. Br. at 16-17 (citing *McMullen*, 985 A.2d at 773).) Goli LLC countered by pointing out that Vinculum withheld payment for Mr. Goli's services to PennDOT in an amount that exceeded the damages Vinculum sustained as a result of Goli LLC's breach of the Consulting Agreement—*i.e.*, $42,525 in withheld payment versus $32,145 in damages. Thus, although conceding that Vinculum won a partial victory on its breach of contract claim, Goli LLC asserted that Vinculum was not the prevailing party because judgment was entered against Vinculum and in favor of Goli LLC for the net verdict of $10,380. As a result, Goli LLC urged that Vinculum was not entitled to attorney fees.

Agreeing with Goli LLC, the Superior Court majority first recognized that an appellate court reviews a trial court's decision on the issue of whether to award attorney fees for an abuse of discretion because "the trial court . . . has the best opportunity to judge the attorney's skills, the effort that was required and actually put forth in that matter

---

[9] In its appeal to the Superior Court, Vinculum raised a total of seven issues; we address only those issues that are relevant to this appeal.

at hand, and the value of that effort at the time and place involved." *Vinculum*, slip op. at 11 (quoting *Gilmore v. Dondero*, 582 A.2d 1106, 1108-09 (Pa. Super. 1990)). Further noting that the burden for demonstrating an entitlement to attorney fees was on Vinculum as the claiming party, the Superior Court echoed Goli LLC's acknowledgement that, despite that Vinculum was successful in its breach of contract claim, judgment was ultimately entered *against* Vinculum for $10,380. Thus, the Superior Court concluded that, "[b]ecause Vinculum failed to provide any analysis of the reasonableness of the fees at issue, and because the record support[ed] the trial court's decision not to award attorney[] fees," Vinculum was not entitled to relief. *Id*. at 12.

Vinculum also argued that the trial court committed an error of law "by sustaining [Goli LLC's] objections to questions at trial concerning profits beyond one-year post-breach, . . . thereby imposing an arbitrary one-year limitation" on Vinculum's damages. (Vinculum's Superior Ct. Br. at 18.) Vinculum contended that the trial court's bar on damages beyond the expiration of the one-year, non-compete period would "hardly make [it] whole[] since Goli [LLC] ha[d] persisted in its violation of the" Consulting Agreement by continuing to place consultants at PennDOT. (*Id*. at 19.) In that regard, Vinculum addressed the concept of "head start" damages. According to Vinculum, courts from other jurisdictions have awarded "head start" damages in cases where injunctive relief was denied and the defendant "started competing before the non-compete period was over," because the defendant was in a better position to compete beyond the term of the restrictive covenant. (*Id*. at 19-20 (quoting *InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1034 (Il. App. Ct. 2012) ("[A restrictive covenant] also takes into account [a] plaintiff['s] loss of a bargained-for side benefit of a noncompete—the lessening of [a] defendant['s] ability to compete, after the restriction expires, simply due to the passage of time.")).) Noting that the admission of evidence is within the trial court's

sound discretion, however, the Superior Court again deferred to the trial court's reasoning that the "Consulting Agreement was for a period of one year, 'and[,] therefore, Vinculum's damages were limited to a period of one year.'" *Vinculum*, slip op. at 15 (quoting Trial Ct. Rule 1925(a) Op. at 9). Because the Superior Court was unable to find any Pennsylvania case law suggesting that damages should be awarded beyond the one-year, non-compete period set forth in the Consulting Agreement, the Superior Court discerned no abuse of discretion by the trial court in limiting Vinculum's damages to the period contracted for by the parties.[10]

## ii. Dissenting Opinion

Judge Bowes disagreed with the majority's rationale concerning the trial court's refusal to award attorney fees and, therefore, dissented from the majority's ultimate conclusion to affirm the trial court on that issue. Judge Bowes opined that trial courts have discretion to award attorney fees where they are founded upon a statute or rule explicitly "placing the question within the court's discretion," but she emphasized that those circumstances were not applicable to this case. *Id.* at 2 (Bowes, J., dissenting) (citing, *inter alia*, *In re Bridgeport Fire Litig.*, 8 A.3d 1270, 1288 (Pa. Super. 2010) (reviewing propriety of attorney fee award in class action pursuant to Pennsylvania Rule of Civil Procedure 1716), *appeal denied*, 23 A.3d 1003 (Pa. 2011)). Rather, Judge Bowes explained that,

> when a contract provides that a breaching party is responsible for attorney fees and the fact-finder has determined that a breach has triggered that provision, the . . . contract must be enforced and some amount of [attorney] fees [must be] awarded as damages. [A] trial court has discretion to determine how much of the claimed fees are reasonable, *but not whether*

---

[10] Goli LLC cross-appealed to the Superior Court raising a number of issues, including whether the trial court correctly held that the Consulting Agreement was enforceable and that Vinculum was entitled to receive $32,145 in damages. The Superior Court, however, found no error in the trial court's reasoning and conclusions and affirmed the trial court's judgment awarding Vinculum $32,145 in damages. *See Vinculum*, slip op. at 18-22.

*to award fees in the first instance*. In other words, upon proof of a breach, it becomes a question not of if there is an entitlement to an attorney fee award, but of how much it will be.

*Id*. at 6 (emphasis added).

In consideration of the plain language of the Consulting Agreement, Judge Bowes reasoned that Vinculum was entitled to "attorney fees for each breach" of the Consulting Agreement and that, after the trial court concluded that Goli LLC breached the Consulting Agreement, the trial court lacked the discretion to deny an award of attorney fees in its entirety. *Id*. at 6-7. Thus, Judge Bowes emphasized that the trial court was limited in its authority to "decide the amount of [attorney] fees reasonably incurred by Vinculum in enforcing the" Consulting Agreement. *Id*. at 7. Because the trial court failed to "rule that at least some amount [of attorney fees] expended by Vinculum was reasonably incurred in enforcing its rights in the face of Goli [LLC's] breach," Judge Bowes would have concluded that the trial court abused its discretion. *Id*. Accordingly, Judge Bowes would have vacated the trial court's judgment and remanded the matter to the trial court "for the trial court to enter a new judgment after determining Vinculum's reasonable attorney fees in accordance with the [Consulting Agreement]." *Id*.

## II. ISSUES

Vinculum filed a petition seeking this Court's discretionary review, which we granted to consider the following issues, as stated by Vinculum:

(1) Whether the trial court erred as a matter of law by finding that [Vinculum] proved the elements of its claim for breach of contract, and yet refus[ed] to enforce the nondiscretionary attorney[] . . . fee[] provision in the [Consulting Agreement]?

(2) Whether the trial court erred as a matter of law by sustaining [Goli LLC's] objections to questions at trial concerning [Goli LLC's] profits beyond one-year post-breach, and thereby imposing an arbitrary one-year limitation on [Vinculum's] damages?

*Vinculum, Inc. v. Goli Techs., LLC*, 280 A.3d 865 (Pa. 2022) (per curiam). To resolve these issues, we must interpret the plain language of the Consulting Agreement, and the

interpretation of a contract is a question of law. *McMullen*, 985 A.2d at 773. As such, this Court's standard of review is *de novo* and our scope of review is plenary. *Id*. "[I]t is hornbook law that the reasonableness of [attorney] fee[s] is a matter for the sound discretion of the [trial c]ourt and will be changed by an appellate [c]ourt only when there is a clear abuse of discretion." *In re LaRocca's Tr. Est.*, 246 A.2d 337, 339 (Pa. 1968). Evidentiary rulings are likewise judged on an abuse of discretion standard, but, insofar as the trial court's evidentiary rulings relating to Goli LLC's counsel's objections at trial were based on a question of law, our standard of review is *de novo* and our scope of review is plenary. *Castellani v. Scranton Times, L.P.*, 124 A.3d 1229, 1240 (Pa. 2015).

### III. DISCUSSION

#### A. Attorney Fees

Vinculum argues that the trial court erred by refusing to enforce the nondiscretionary attorney fee provision set forth in the Consulting Agreement. Addressing this Court's decision in *McMullen*, Vinculum explains that we previously observed that a breaching party to a contract containing an attorney fee provision must pay the attorney fees incurred by the non-breaching party in enforcing that contract. The only real issue in *McMullen*, Vinculum insists, was "whether a court could analyze the *reasonableness* of the attorney[] fees claimed, which was answered in the affirmative." (Vinculum's Br. at 15 (emphasis in original).) Here, Vinculum explains that the trial court errantly refused it the opportunity to introduce evidence of its attorney fees despite finding that Vinculum was the "prevailing party" due to Goli LLC's breach of the Consulting Agreement. (*Id*. at 15-16.) Vinculum insists that no case in Pennsylvania has ever completely ignored an attorney fee provision in such a circumstance and that the trial court, therefore, should have undertaken a reasonableness inquiry pursuant to *McMullen*. Thus, Vinculum maintains that, "[u]nder settled case law, the [t]rial [c]ourt had no basis to

override the parties' express agreement for an award of [attorney] fees in favor of Vinculum." (*Id*.)

Goli LLC generally responds that, under *McMullen*, a party does not have an unfettered right to attorney fees. (Goli LLC's Br. at 29 (quoting *McMullen*, 985 A.2d at 776 ("If we were to forbid a reasonableness inquiry by a trial court, there would be no safety valve and courts would be required to award attorney fees even when such fees are clearly excessive."))) Rather, Goli LLC reads *McMullen* to instill both a reasonableness inquiry *and* a prevailing party requirement before a trial court may make an award of attorney fees:

> [W]e join the majority of our sister states in finding that parties may contract to provide for the breaching party to pay the attorney fees *of the prevailing party* in a breach of contract case, but that the trial court may consider whether the fees claimed to have been incurred are reasonable, and to reduce the fees claimed if appropriate.

(*Id*. at 29-30 (emphasis in original) (quoting *McMullen*, 985 A.2d at 776-77).) Goli LLC posits that, in the wake of *McMullen*, the prevailing party requirement is settled law and that "Vinculum seeks to break this mold" because it was not the prevailing party in the underlying litigation. (*Id*. at 30-31 (citing, *inter alia*, *Bert Co. v. Turk*, 257 A.3d 93, 116-18 (Pa. Super. 2021) (awarding attorney fees to prevailing party), *aff'd*, 298 A.3d 44 (Pa. 2023)).)

In line with the Superior Court majority's decision below, rather, Goli LLC observes that the trial court found that Goli LLC's breach caused Vinculum to sustain $32,145 in damages, but that the trial court also found that *Vinculum's breach* caused Goli LLC to sustain $42,525 in damages. In support, Goli LLC explains that the Superior Court previously set forth the definition of "prevailing party" in *Profit Wize Marketing v. Wiest*, 812 A.2d 1270 (Pa. Super. 2002), and it emphasizes that the *Profit Wize* definition is now settled law in Pennsylvania:

> "[P]revailing party," is commonly defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." While this definition encompasses those situations where a party receives less relief than was sought or even nominal relief, its application is still limited to those circumstances where the fact finder declares a winner and the court enters judgment in that party's favor. Such a pronouncement does not accompany a compromise or settlement.

*Profit Wize*, 812 A.2d at 1275-76 (citation omitted) (quoting *Prevailing Party*, Black's Law Dictionary 1145 (7th ed. 1999)). Thus, Goli LLC reiterates that, "[a]lthough Vinculum won a partial victory on its [breach of contract] claim," Vinculum's "victory was eclipsed by the amount it was found to owe" Goli LLC based on Goli LLC's counterclaims. (Goli LLC's Br. at 36.) As such, Goli LLC insists that Vinculum is not entitled to an award of attorney fees.

We begin our analysis by reiterating the contractual language that we are called upon to interpret. The Consulting Agreement provides, in relevant part:

> [Goli LLC] understands and acknowledges that a breach of this [non-compete provision] would cause substantial harm to Vinculum, which would be difficult to calculate. Therefore, as liquidated damages, and not a penalty, [Goli LLC] agrees to pay Vinculum as decided by a court of [l]aw for each violation in addition to all damages, costs, including court costs and reasonable attorney fees incurred by Vinculum in enforcing the provisions of this Agreement. [Goli LLC] further agrees and authorizes Vinculum to withhold payment up to the damages incurred in case of any violation by [Goli LLC] or [Mr. Goli].

(R.R. at 12; Consulting Agreement ¶ 10.) The trial court concluded that the Consulting Agreement is valid and enforceable and that Goli LLC breached the Consulting Agreement on two occasions by placing Mr. Goli and S.A. at PennDOT during the one-year, non-compete period. The Superior Court affirmed the trial court's decision concerning the enforceability of the Consulting Agreement and Goli LLC's breach thereof, and Goli LLC did not seek this Court's review of those decisions. Thus, the Consulting Agreement's attorney fee provision, which does not contain an explicit prevailing party requirement, was clearly implicated. The only question we must answer, then, is whether

Goli LLC is correct that an attorney fee provision, such as the one at issue in this case, contains an implicit prevailing party requirement such that Vinculum is precluded from receiving an award of attorney fees because, even though the trial court found that Goli LLC breached the Consulting Agreement, the trial court ultimately entered judgment *against* Vinculum. To accept Goli LLC's position, however, would require us to disregard the plain language of a business contract bargained for at arm's length between two parties of equal influence to the negotiation. That we cannot do.

"Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, *a clear agreement of the parties*, or some other established exception." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482-83 (Pa. 2009) (emphasis added). It is apodictic that "freely negotiated agreements entered into at arms length are generally enforced according to their terms to allow parties the benefit of their bargains." *McMullen*, 985 A.2d at 778 (Saylor, J., concurring and dissenting). Indeed, "[i]nadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescission of a contract." *Snow v. Corsica Constr. Co., Inc.*, 329 A.2d 887, 889 (Pa. 1974) (quoting *Welsh v. Ford*, 127 A. 431, 432 (Pa. 1925)). Nor can a court alter the terms of a contract "under the guise of construction . . . whether in wisdom or folly, expressly agreed." *Delaware Cnty. v. Delaware Cnty. Prison Emps. Indep. Union*, 713 A.2d 1135, 1138 (Pa. 1998). Consequently, where the intent of the parties is expressed in clear, unambiguous terms in a contract, the parties' intent must be enforced. *Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015), *cert. denied*, 577 U.S. 1182 (2016).

The attorney fee provision set forth in the Consulting Agreement is subject to only one reasonable interpretation: Goli LLC agreed to pay Vinculum its reasonable attorney

fees incurred in enforcing the non-compete provision against Goli LLC. Goli LLC breached the Consulting Agreement on two occasions during the one-year, non-compete period by openly competing with Vinculum, prompting Vinculum to pursue legal action against Goli LLC that resulted in an award of $32,145 in damages in favor of Vinculum— *i.e., Vinculum successfully enforced the non-compete provision against Goli LLC.* Because the attorney fee provision is entirely one-sided in favor of Vinculum, Vinculum is entitled to a reasonable amount of attorney fees *regardless* of whether Goli LLC succeeded on its counterclaims. The prevailing party paradigm simply does not apply. In other words, the plain and unambiguous language of the Consulting Agreement does not require Vinculum to be a prevailing party to entitle Vinculum to a reasonable award of attorney fees; it only requires that Vinculum be successful in enforcing the non-compete provision of the Consulting Agreement against Goli LLC, which Vinculum clearly accomplished.

There is no indication from the record, moreover, nor has Goli LLC suggested, that Goli LLC somehow had less bargaining power in the negotiation of the Consulting Agreement such that the attorney fee provision is inequitable. As such, if Goli LLC desired a prevailing party requirement, it clearly could have negotiated for one or otherwise sought to make the attorney fee provision more equal. As Justice Saylor recognized in a concurring and dissenting opinion in *McMullen*, in contractual as opposed to statutory fee-shifting matters, courts from a number of other jurisdictions generally "limit the level of judicial scrutiny" and defer to the parties' agreement. *McMullen*, 985 A.2d at 779 (Saylor, J., concurring and dissenting) (citing, *inter alia*, *Carpenter Tech. Corp. v. Armco, Inc.*, 808 F. Supp. 408, 410 (E.D. Pa. 1992) ("[The] duty to scrutinize [an attorney fee award] is less demanding when an award of [attorney] fees arises from a bargained-for contract clause rather than from a common fund or statute."), *aff'd*, 993 F.2d 876

(3d Cir. 1993)).  Accordingly, we must enforce the plain and unambiguous language of the Consulting Agreement, which at the very least entitles Vinculum an opportunity to present evidence before the trial court concerning the attorney fees it incurred to enforce the Consulting Agreement against Goli LLC.

In addition, and contrary to Goli LLC's assertions, *McMullen* and *Profit Wize* do not compel this Court to reach a different conclusion and read nonexistent words into an unambiguous contract.  *McMullen* concerned a husband and wife who entered into a separation and property settlement agreement that contained an attorney fee provision:

> If either party breaches any provision of this [a]greement, the other party shall have the right, at his or her election, to sue for damages for such breach or seek such other remedies or relief as may be available to him or her, and the party breaching this contract shall be responsible for payment of legal fees and costs incurred by the other in enforcing their rights under this [a]greement.

*McMullen*, 985 A.2d at 771 (citation omitted).  Notably, the attorney fee provision did not require that the fees incurred by the non-breaching party be reasonable.  *Id*.  After the husband breached the agreement, the wife filed a petition to enforce, wherein she sought unpaid child support and her share of the husband's military pension.  *Id*.  The trial court granted the wife's petition and calculated the amount due to the wife as $792.12.  *Id*.  Given the trial court's determination, there was no dispute that wife was entitled to an award of attorney fees under the agreement.  *Id*. at 771-72.  The trial court refused to grant the wife's request for $3,000 in attorney fees, however, because the trial court concluded that the amount was unreasonable.  *Id*. at 772.  Specifically, the trial court explained that the wife's attorney did not attempt to resolve the "simple and straightforward" issues out of court, the wife's attorney initially demanded all sums due plus attorney fees with no breakdown of what the sums were, and the wife's attorney failed to keep attorney fees generally reasonable.  *Id*.  Consequently, the trial court only

awarded $1,200 in attorney fees, which was 1.5 times the amount awarded for the underlying dispute. *Id*.

The wife appealed, and the Superior Court affirmed. This Court granted the wife's petition for allowance of appeal to consider "whether reasonableness is an implicit term in a contractual provision awarding attorney fees for a breach of contract." *Id*. at 773. Concluding that it was, we opined that "to require any and all fees incurred by the non-breaching party to be payable by the breaching party" would lead to exorbitant and unjustified fees, or, in other words, an abuse of the system. *Id*. at 776. Thus, fashioning a reasonableness inquiry as a "safety valve" to that hazard, we held that a trial court "may consider whether the [attorney] fees claimed to have been incurred are reasonable[] and . . . reduce the [attorney] fees claimed if appropriate." *Id*. at 776-77.

Somewhat distinctly, *Profit Wize* concerned a dispute relative to an attorney fee provision in an employment contract:

> Employee recognizes and agrees that the ascertainment of damages in the event of Employee's breach or violation of any covenant or undertaking contained in this [a]greement would be difficult, if not impossible . . . . *Employee further agrees that if Employer prevails in any suit or action under this [a]greement, Employee shall reimburse Employer for its expenses incurred in connection with such suit or action, including without limitation, its attorney[] fees and costs.*

*Profit Wize*, 812 A.2d at 1272 (emphasis in original) (citation omitted). The employee breached the employment agreement's non-compete provision shortly after terminating his employment with the employer and the employer brought suit. *Id*. By the time the parties came before the trial court for a hearing on the employer's motion for a preliminary injunction, however, they had settled their dispute and memorialized the settlement—a permanent injunction—in an agreement. *Id*. As a condition of the settlement, the employer waived its claim for damages but reserved its right to seek attorney fees. *Id*. As a result, the employer submitted attorney fee invoices to the trial court, and the parties

asked the trial court to determine whether the attorney fees were reasonable and whether the employer had "prevailed" in the underlying action. *Id*. The trial court concluded that the employer partially prevailed and, therefore, awarded a portion of the requested attorney fees. *Id*. at 1273.

The Superior Court reversed, observing that the employee agreed to pay the employer's attorney fees and costs in the event that the employer "prevail[ed] in any suit or action." *Id*. at 1275. Lacking definitions in the employment agreement itself, the Superior Court observed that to "'prevail' means 'to gain ascendancy through strength or superiority: TRIUMPH.'" *Id*. (quoting *Prevail*, Merriam Webster's Collegiate Dictionary 924 (7th ed. 1965)). "Additionally," the Superior Court noted that "Black's Law Dictionary . . . defined the verb, prevail, as 'to obtain the relief sought in an action; to win a lawsuit <the plaintiff prevailed in the Supreme Court>.'" *Id.* (quoting *Prevail*, Black's Law Dictionary 1206 (7th ed. 1999)). In the case before it, however, the Superior Court explained that the parties settled their differences by negotiating an end to the litigation. *Id*. In so doing, the Superior Court pointed out that each party "managed to preserve certain legal rights and willingly relinquished others." *Id*. Namely, the employer restricted the employee's ability to solicit and contact some of the employer's clients, but the employee also managed to reduce the length of the non-compete period by one year and prevented the employer from seeking further legal remedies. *Id*. Therefore, the Superior Court reasoned:

> Such a resolution, in keeping with the nature of most settlement agreements, evidences a compromise. Neither party in this case emerges as the clear-cut winner. As the plain and unambiguous meaning of "prevail" [required the employer] to "triumph" or "win" in the underlying action, we do not find that [the employer] is entitled to an award of attorney fees and costs.
>
> Consistent with this interpretation, we note that the noun, "prevailing party," is commonly defined as "*a party in whose favor a judgment is rendered, regardless of the amount of damages awarded*." [*Prevailing Party*, Black's Law Dictionary 1145 (7th ed. 1999)]. While this definition

encompasses those situations where a party receives less relief than was sought or even nominal relief, its application is still limited to those circumstances where the fact finder declares a winner and the court *enters judgment in that party's favor*. Such a pronouncement does not accompany a compromise or settlement.

*Id.* at 1275-76 (emphasis added) (footnote omitted). Consequently, the Superior Court concluded that the employer was not entitled to attorney fees.

Despite Goli LLC's attempts to cherry-pick the brief mention of "prevailing party" in *McMullen* and the "entry of judgment" notion discussed by the Superior Court in *Profit Wize*, neither case controls our decision. Plainly, *McMullen*'s essential holding was limited to concluding that a trial court is permitted to consider the reasonableness of contractually mandated attorney fees and to reduce those fees where the trial court deems it appropriate. *See McMullen*, 985 A.2d at 776-77. This Court did not consider what constitutes a "prevailing party" for purposes of an award of attorney fees, nor did we hold that a one-sided attorney fee provision, like that in the Consulting Agreement, has an implicit prevailing party requirement. And we decline to hold so now. As explained above, this Court is not permitted to deviate from the plain language of an unambiguous contract "under the guise of construction . . . whether in wisdom or folly, expressly agreed." *Delaware Cnty.*, 713 A.2d at 1138.

*Profit Wize* is equally inapplicable. Critically, the attorney fee provision in *Profit Wize contained an express prevailing party requirement*. *See Profit Wize*, 812 A.2d at 1272 ("Employee further agrees that if Employer prevails in any suit or action under this Agreement . . . ." (emphasis omitted)). Thus, the Superior Court, acknowledging that it must "give effect to the parties' intent" as expressed in the unambiguous terms of the

employment agreement, properly applied meaning to the phrase "prevails in any suit or action." *Id*. at 1274. The Consulting Agreement, however, contains no such language.[11]

In sum, we conclude that the trial court abused its discretion in rejecting outright Vinculum's request for attorney fees and that the Superior Court erred as a matter of law in affirming the trial court's decision. The clear and unambiguous language of the Consulting Agreement entitles Vinculum to, at the very least, an opportunity to present evidence before the trial court concerning the attorney fees it incurred in enforcing the Consulting Agreement's non-compete provision against Goli LLC. Because the trial court refused to provide Vinculum with that opportunity, the trial court must hold a hearing on remand. If the evidence concerning Vinculum's attorney fees is properly admitted at that hearing,[12] the trial court may consider the reasonableness of the amount of the attorney

---

[11] As noted, Goli LLC attempts to argue that Vinculum breached the Consulting Agreement by withholding the $42,525 it owed Goli LLC for the services that Mr. Goli rendered to PennDOT while he was placed there through Vinculum, thereby suggesting that Goli LLC also prevailed in enforcing the terms of the Consulting Agreement. The Consulting Agreement, however, permitted Vinculum to withhold payment of those funds: "[Goli LLC] further agrees and authorizes Vinculum to withhold payment up to the damages incurred in case of any violation by [Goli LLC] or [Mr. Goli]." (R.R. at 12; Consulting Agreement ¶ 10.)

[12] Goli LLC argues, in the alternative, that Vinculum failed to disclose its invoices for the attorney fees it incurred to Goli LLC in accordance with Goli LLC's purported discovery requests and the trial court's required discovery deadlines, and that Vinculum, therefore, should be precluded from introducing that evidence before the trial court. (*See* Goli LLC's Br. at 37-38 (citing Pa.R.Civ.P. 212.2(c)(2) ("Where the trial judge determines that unfair prejudice shall occur as the result of non-compliance with [the requirements for pre-trial statements], the trial judge shall grant appropriate relief which may include . . . the preclusion of exhibits not listed in the pre-trial statement and made available."); Pa.R.Civ.P. 4019(a)(1)(viii), (c)(2) (providing that court, upon motion for sanctions, may "make . . . an order . . . prohibiting [a disobedient] party from introducing in evidence designated documents" where that party failed to make discovery or otherwise comply with discovery order).) On remand, Goli LLC should be permitted to object to the introduction of Vinculum's attorney fee invoices and argue that Vinculum should be precluded from introducing such evidence.

fees sought in light of the specific facts of this case and render some attorney fee award in Vinculum's favor.

## B. Lost-Profit Damages

Vinculum contends that the trial court erred as a matter of law by sustaining Goli LLC's objections at trial concerning questions regarding the consultants Goli LLC placed at PennDOT beyond the one-year, non-compete period set forth in the Consulting Agreement and the profits it earned from doing so, thereby arbitrarily limiting Vinculum's damages to one year. In support, Vinculum maintains that it is entitled to all damages flowing from Goli LLC's breach of the Consulting Agreement and that it was not made whole by the trial court's award of damages because Goli LLC has persisted in its violations of the non-compete provision. In other words, Vinculum asserts that Goli LLC has remained in breach of the Consulting Agreement because it never observed the non-compete period. "In cases where injunctive relief does not issue to enforce a restriction," Vinculum notes that courts from other jurisdictions have awarded "head start" damages—*i.e.*, damages intended to compensate a party where the breaching party starts competing before the non-compete period ended and is, therefore, in a better position to compete after the non-compete period ended than they would have been otherwise. (Vinculum's Br. at 17-18 (quoting *InsureOne*, 976 N.E.2d at 1034, and citing *Welsco, Inc. v. Brace* (E.D. Ark., No. 4:12–cv–00394–KGB, signed Sept. 30, 2014), slip op. at 20 ("Consequential damages are those damages that do not flow directly and immediately from the breach, but only from some of the consequences or results of the breach.")).)

To that end, Vinculum observes that the testimony at trial established that Goli LLC increased its number of consultants at PennDOT by six after the expiration of the one-year, non-compete period set forth in the Consulting Agreement, while Vinculum

simultaneously *lost* six consultants at PennDOT, which Vinculum insists is no coincidence. Vinculum further notes that Mr. Kalantri testified that the requisitions for those consultants were not specialized such that Vinculum could have filled those positions at PennDOT but for Goli LLC's breach. "Accordingly," Vinculum urges that it is entitled "to ongoing damages from Goli [LLC's] brazen transformation into a competing vendor," that its lost-profit damages are not speculative, and that the trial court, therefore, should have permitted Vinculum's questioning of Mr. Goli concerning Goli LLC's placement of consultants at PennDOT beyond the non-compete period and the profits it earned from doing so. (*See id*. at 18-19.)

Goli LLC generally responds that the present state of the law in Pennsylvania does not permit a party to recover damages that accrue beyond the expiration of a non-compete provision because restrictive covenants are strongly disfavored and strictly construed in Pennsylvania. (Goli LLC's Br. at 41-49 (quoting, *inter alia*, *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 126 A.3d 1266, 1277 (Pa. 2015) ("[O]ur Commonwealth has a long, and virtually uniform, history of *strongly disfavoring* covenants in restraint of trade." (emphasis added)))).) Furthermore, even if this Court were to adopt Vinculum's "[p]referred [m]easure" of lost-profit damages, Goli LLC submits that Vinculum failed to provide a basis at trial to prove those damages. (*Id*. at 55.) Goli LLC explains that there were approximately 300 vendors vying for open IT positions at PennDOT, and Vinculum did not establish that it lost positions during the one-year, non-compete period set forth in the Consulting Agreement or anytime thereafter. Thus, Goli LLC insists there was no foundation for Vinculum to question Goli LLC about its profits after the non-compete

period ended, and the trial court, therefore, did not err in sustaining Goli LLC's counsel's objections to Vinculum's counsel's questioning.[13]

Initially, we agree with Vinculum that, insofar as the trial court and the Superior Court imposed an absolute bar on the award of damages beyond the one-year, non-compete period set forth in the Consulting Agreement, those courts erred as a matter of law. *See Vinculum*, slip op. at 15-16 ("This [c]ourt is unable to find any Pennsylvania case law supporting Vinculum's argument that damages should be awarded beyond the time period agreed to by the parties in the Consulting Agreement."); (Trial Ct. Rule 1925(a) Op. at 9 ("The restrictive covenant in the Consulting Agreement was for a period of one year, and[,] therefore[,] Vinculum's damages were limited to a period of one year.").) It is beyond cavil that breach of contract damages are intended to place the non-breaching party "nearly as possible in the same position [it] would have occupied had there been no breach." *Lambert v. Durallium Prods. Corp.*, 72 A.2d 66, 67 (Pa. 1950). The measure of such damages is "*compensation* for the loss sustained," and the "aggrieved party can recover nothing more than will compensate [it]." *Id*. (emphasis in original). More specifically:

> Where one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provides otherwise, whatever damages [it] suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably for[e]seeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.

*Taylor v. Kaufhold*, 84 A.2d 347, 351 (Pa. 1951) (emphasis omitted). This Court has long adhered to those principles. *See, e.g., Billmeyer, Dill & Co. v. Wagner*, 91 Pa. 92, 94

---

[13] Following oral argument before this Court, Goli LLC filed an application pursuant to Pennsylvania Rule of Appellate Procedure 2501, concerning "Post-submission Communications," for Goli LLC to submit additional briefing on issues discussed at oral argument. After careful review of Goli LLC's submission, we deny its application.

(Pa. 1879) ("Damages for which compensation may be justly claimed . . . should be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, or such as might according to the ordinary course of things be expected to follow its violation."); *Kinports v. Breon*, 44 A. 436, 436 (Pa. 1899) ("In an action for a breach of contract, the loss for which a recovery may be had must be the direct and proximate consequence of the breach, and so connected with the stipulation as to have been in the contemplation of the parties when the contract was made."). Nor is there any question that a party can obtain lost profits as a form of consequential damages in a breach of contract case. *See AM/PM Franchise Ass'n v. Atl. Richfield Co.*, 584 A.2d 915, 920 (Pa. 1990) ("In addition to recognizing general damages under [the codified provisions of the Uniform Commercial Code], Pennsylvania allows consequential damages in the form of lost profits to be recovered."); *Taylor*, 84 A.2d at 352 (holding that tenant was entitled to lost profits from assignee's unjustified holdover of business premises); *Delahanty v. First Pa. Bank, N.A.*, 464 A.2d 1243, 1258 (Pa. Super. 1983) ("It is well settled law in Pennsylvania that loss of profits are recoverable upon proper proof both in contract . . . and in tort." (citing *Taylor*, 84 A.2d at 351-52)).

Under these principles, unless the contract itself expressly limits recoverable damages to those incurred during the non-compete period, a party harmed by the breach of a non-compete should be afforded the opportunity to seek and prove the ordinary, foreseeable, and certain damages that flow from the breach. This may include future lost profits extending beyond the non-compete period. To conclude otherwise undercuts the essence of the contract principles discussed above. Accordingly, we conclude that the trial court and the Superior Court erred in holding that Pennsylvania law limits a party enforcing a non-compete agreement from seeking and proving damages beyond the time period of the restrictive covenant.

But our analysis of the question does not end here. It is clear from the record that the trial court prevented Vinculum's counsel from questioning Mr. Goli concerning Goli LLC's placement of additional consultants at PennDOT after the expiration of the non-compete agreement and the profits that Goli LLC earned from doing so. Based on our conclusion above, the trial court should have allowed this line of questioning, but only *if* Vinculum established a foundation at trial that Goli LLC's breach of the Consulting Agreement caused Vinculum's business tangible harm in the year or years following the expiration of the non-compete period—*i.e.*, a connection between Goli LLC's breach and Vinculum's lost profits. *See Helpin v. Trs. of Univ. of Pa.*, 10 A.3d 267, 270 (Pa. 2010) ("The law does not permit a damages award to be based on mere guesswork or speculation, but rather[,] requires a reasonable basis to support such an award."); *Delahanty*, 464 A.2d at 1257-58 ("Although the law does not command mathematical precision from evidence in finding damages, sufficient facts must be introduced so that the court can arrive at an intelligent estimate without conjecture."). A close review of the record and, particularly, the trial transcript in this matter, illustrates that the trial court generally afforded Vinculum the opportunity to make this showing, but that Vinculum failed to do so. Accordingly, the trial court did not abuse its discretion in precluding Vinculum from questioning Mr. Goli about Goli LLC's placement of consultants at PennDOT and the profits it earned in the outyears.

As set forth in detail above, Mr. Goli's testimony at trial established that Mr. Goli began working at PennDOT in 2012 through IntelliSoft and Vinculum. Mr. Goli formed Goli LLC in 2012 or 2013 and attempted to place consultants at PennDOT. After Mr. Goli obtained his green card, he sought to work for PennDOT directly through Goli LLC but was unable to do so because of his existing/prior contract with Vinculum. Thus, Goli LLC entered into the Consulting Agreement with Vinculum. Goli LLC continued in its attempts

to place consultants at PennDOT in 2015, doing so successfully for Gayam. Once PennDOT's new MSP agreed to allow Goli LLC to place Mr. Goli directly at PennDOT, Goli LLC terminated the Consulting Agreement and placed Mr. Goli at PennDOT in early 2016. Goli LLC then placed S.A. at PennDOT later in 2016.

On cross-examination, Vinculum's counsel questioned Mr. Goli regarding the consultants that Goli LLC placed at PennDOT after the one-year, non-compete period set forth in the Consulting Agreement expired. The trial court initially allowed Vinculum's counsel's line of questioning over Goli LLC's counsel's objection, resulting in Mr. Goli admitting that, at the time of trial, Goli LLC had placed and maintained six consultants/employees at PennDOT. (R.R. at 518-19.) Vinculum's counsel's continued questioning on the topic, however, led to the following exchange:

> [Vinculum's counsel]: Okay. In 2016, did Goli [LLC] . . . place anybody else at PennDOT besides S.A.?
>
> [Mr. Goli]: No.
>
> [Vinculum's counsel]: How about 2017?
>
> [Goli LLC's counsel]: Objection.
>
> THE COURT: What's the basis of the objection?
>
> [Goli LLC's counsel]: That is . . . beyond the timeline scope of the [Consulting A]greement.
>
> THE COURT: All right. [Vinculum's counsel], why would that be relevant?
>
> [Vinculum's counsel]: Sure. Your Honor, the position that we have, as supported by case law, is that where the restrictive covenant period, in this case one year, is never observed, . . . there's an ongoing breach until it's actually observed.
>
> So[,] we believe it's relevant through the present time to inquire as to all the consultants that are being placed there in violation of the restrictions.
>
> THE COURT: Wouldn't your damages be . . . the money that was either billed or earned, or whatever, I'm not getting into the details with that, for the period of one year?
>
> [Vinculum's counsel]: We don't believe so, Your Honor. We first and foremost have an injunctive relief claim since the one-year[, non-compete

period] was never abided by, and the contract expressly calls for injunction as a remedy.

THE COURT:  It does, and a judge of this [c]ourt determined that it was not appropriate to grant an emergency injunction, and I'm assuming that was because the determination was made that there -- irreparable harm was not present that you could recover damages.

[Vinculum's counsel]:  Your Honor, yes, the emergency [m]otion for [p]reliminary [i]njunctive [r]elief was denied as far as we understand for that reason.  The [o]rder didn't have an [o]pinion, but if you read the transcript it seems that . . .  [the judge], decided it wasn't . . . an emergency[,] . . . but that doesn't mean we don't have an injunctive claim.  That's one of our counts in our [amended c]omplaint.

Quite frankly, if the position is that you can't get injunctive relief after a year goes by, then an injunction is meaningless because lawsuits are always going to take at least a year.  So[,] if somebody can just disregard a one-year restriction and wait for the year to go by --

THE COURT:  Not without penalty.

[Vinculum's counsel]:  *Well, in this case what Mr. Goli and [Goli LLC] had been able to do is to set up a completely competing firm as a result of disregarding the contract.*

THE COURT: *From the evidence I've heard so far it certainly sounds to me like that firm was set up beforehand and was soliciting business through PennDOT before they ever entered your contract.*

[Vinculum's counsel]:  Correct, but the contract that these two companies entered into voluntarily specifically says you can't compete with just one client; you can go anywhere else in the world, or even anywhere else in the Commonwealth of Pennsylvania, not PennDOT.

So[,] here we're going to sanction somebody just disregarding it knowing that, [a]ll right, . . . I'll just pay some small amount of damages and then be able to compete.

The whole purpose of this is one year, a very limited restriction in terms of time, the most narrowly tailored restriction in terms of one client; and we believe that injunctive relief is still a remedy for the breach.  There's been an ongoing breach every day.

THE COURT: All right.  I'm going to sustain the objection.

(*Id*. at 553-56 (emphasis added).)

Vinculum then attempted to establish that the only reason Goli LLC was able to gain market status and place consultants at PennDOT was by virtue of Mr. Goli's placement at PennDOT through IntelliSoft and Vinculum and the Consulting Agreement.

Mr. Kalantri testified concerning the bid process at PennDOT, explaining that from 2012 through 2015, the normal bid-process environment involved an open position that the MSP/PennDOT would issue to 200 to 300 vendors who would then submit resumes to the MSP/PennDOT and the top ten candidates would be selected for consideration. (*Id*. at 580.) Mr. Kalantri noted, however, that the hiring process changed to sole-source, no-bid solicitation for a large amount of the placement market, after which Vinculum was not able to bid on many positions. (*Id*. at 581.) Mr. Kalantri testified that Goli LLC received no-bid contracts and was able to place consultants at PennDOT as a result of the relationships Mr. Goli made at PennDOT while working there through Vinculum. (*Id.* at 583-85.) In other words, Vinculum was the only reason that Goli LLC was able to succeed in the market.

Mr. Goli explained in his testimony, however, that Vinculum did not "reveal" anything regarding PennDOT and its MSP through the Consulting Agreement because Mr. Goli had worked at PennDOT and for its MSP since 2012. (*Id*. at 652-53.) Mr. Goli noted that a former colleague who worked at PennDOT informed Mr. Goli of the available position, but Mr. Goli was forced to contract with PennDOT through Vinculum due to his immigration status. (*Id*. at 531-33, 652-53.) Mr. Goli also specifically stated that all the consultants Goli LLC placed or attempted to place at PennDOT beginning in 2013 went through the normal, competitive bid process. (*Id*. at 667; *see generally id.* at 654-700.) Indeed, Mr. Goli stressed that his employment relationship with PennDOT did not give Goli LLC a superior ability to submit candidates for consultant positions at PennDOT because the MSP process is intended to preclude that kind of favoritism. (*Id*. at 676-77.) Relatedly, on cross-examination, Mr. Kalantri could not confirm with certainty that, had Goli LLC not been involved in the solicitation process, Vinculum would have been

successful out of the 200 or 300 other vendors in placing the six consultants at PennDOT that Goli LLC did. (*See id*. at 612-15, 620.)

In light of that testimony, the trial court concluded that, to the extent Mr. Goli's and Mr. Kalantri's testimony conflicted, Mr. Goli was more credible. (*Id*. at 721-22.) The trial court found that Mr. Kalantri was "somewhat evasive" and was "relying on legal interpretations" the Consulting Agreement did not substantiate. (*Id*. at 722.) As to the measure of damages, the trial court rejected, arguably as incredible, Mr. Kalantri's theory that Goli LLC gained an unfair advantage due to its breach of the Consulting Agreement; rather, based on Mr. Goli's testimony, the trial court concluded that Goli LLC was going through the proper bid process to place consultants at PennDOT through its MSP and that PennDOT's no-bid process was to blame for any failure on behalf of Vinculum to obtain contracts for those consultants. (*Id*. at 722-23.) Vinculum did not challenge the trial court's credibility determinations or factual findings on appeal, and, therefore, we defer to the trial court's assessment.[14]

The foregoing further demonstrates that the trial court's reasoning supporting its decision to limit Vinculum's counsel's questioning regarding Goli LLC's operations beyond the one-year, non-compete period set forth in the Consulting Agreement was sound. Foremost, there is simply nothing in the Consulting Agreement, nor does Vinculum reference any applicable case law, to support the notion that Goli LLC somehow continues to breach the Consulting Agreement because it never observed the non-compete period in the first place. Indeed, Vinculum seems to forget that it was *compensated* for Goli LLC's breach of the Consulting Agreement by the trial court's

---

[14] In any event, questions of witness credibility are "for the trial court to resolve, not our appellate courts," and factual findings are entitled to significant deference where they are supported by substantial evidence and free from legal error. *In re Lokuta*, 11 A.3d 427, 445-46 (Pa.), *cert. denied*, 565 U.S. 878 (2011); *see also Commonwealth v. Crawley*, 924 A.2d 612, 616 (Pa. 2007), *cert. denied*, 552 U.S. 1297 (2008).

damages award. Had Vinculum intended for such an ongoing penalty mechanism, it could have negotiated for one and/or simply included it in the Consulting Agreement, *which is an instrument that Vinculum drafted*.

The trial court also correctly acknowledged that Goli LLC was formed around 2012 or 2013 and had the wherewithal to place consultants at PennDOT prior to contracting with Vinculum, as evidenced by Mr. Goli's testimony. Although Mr. Kalantri testified that Vinculum lost six clients and Goli LLC gained six clients, Vinculum did not present evidence to demonstrate that the clients Goli LLC gained were the same clients that Vinculum lost. Notably, Vinculum also could not illustrate that, but for Goli LLC's intervention in the market, Vinculum would have been the successful vendor out of the other 200 or 300 vendors to fill those open consulting positions at PennDOT.[15]

Even assuming, *arguendo*, that Mr. Goli somehow managed to build relationships at PennDOT when he worked there through Vinculum that allowed Goli LLC to later obtain favorable bids, Vinculum did not sue Mr. Goli personally—it sued Goli LLC. If Vinculum is intending to pursue a breach of contract claim based on Mr. Goli's alleged misuse of proprietary information, its lawsuit here is misplaced. Relevant to this case, however, is that Goli LLC was soliciting business with PennDOT before contracting with Vinculum, and it continued to do so after the one-year, non-compete period set forth in the Consulting Agreement expired. Thus, there was simply no testimony or evidence to establish that Goli LLC's premature competition as a result of its breach of the Consulting

---

[15] We agree with Justice Wecht in his concurring opinion that "lost[-]profit damages are difficult, if not impossible, to calculate with precision," and that economic forecasting can be used to demonstrate an entitlement to lost profits. Concurring Op. at 4 (citing, *inter alia*, *Aiken Indus., Inc. v. Est. of Wilson*, 383 A.2d 808, 812 (Pa.) (plurality), *cert. denied*, 439 U.S. 877 (1978), and *AM/PM Franchise Ass'n v. Atl. Richfield Co.*, 584 A.2d 915, 925 (Pa. 1990)). Our discussion above tracks the arguments that Vinculum advanced both at trial and on appeal. This Opinion in no way forecloses the use of other means to demonstrate, with at least some precision, an entitlement to lost-profit damages.

Agreement somehow placed Vinculum at a market disadvantage that would entitle Vinculum to lost-profit damages.

In short, contrary to Vinculum's protestations, the trial court clearly afforded Vinculum the opportunity to demonstrate why it was entitled to lost-profit damages beyond the scope of the one-year, non-compete period set forth in the Consulting Agreement due to Goli LLC's breach and subsequent competition, but Vinculum failed to do so. Instead, the record is clear that the damages Vinculum sought to obtain were highly speculative, if not nonexistent. While we agree that restrictive covenants are important business tools to prevent the theft of customers and unfair competition, *Rullex Co., LLC v. Tel-Stream, Inc.*, 232 A.3d 620, 624 (Pa. 2020), it is equally manifest that "[t]he law does not permit a damages award to be based on mere guesswork or speculation." *Helpin*, 10 A.3d at 270. As such, we conclude that the trial court did not abuse its discretion in sustaining Goli LLC's counsel's objections to Vinculum's counsel's questioning at trial concerning the consultants that Goli LLC placed at PennDOT after the expiration of the non-compete period and the profits it earned from doing so, and, therefore, the Superior Court properly affirmed the trial court's decision relative to lost-profit damages, albeit for different reasons.

## IV. CONCLUSION

We reverse the Superior Court's decision affirming the trial court's denial of attorney fees and remand to the Superior Court with instructions to vacate the trial court's judgment and remand to the trial court for the trial court to hold a hearing solely on the issue of attorney fees. At the hearing, the trial court should provide Vinculum with the opportunity to introduce evidence of the attorney fees that it incurred as a consequence of Goli LLC's breach of the Consulting Agreement. If the evidence is properly admitted over any objections that Goli LLC may make, the trial court may consider the

reasonableness of the attorney fees in light of the specific facts of the case and render some award in Vinculum's favor. As to lost-profit damages beyond the one-year, non-compete period set forth in the Consulting Agreement, we conclude that the Superior Court erred insofar as it imposed an absolute bar on the award of damages after the non-compete period expired. Nonetheless, because we conclude that Vinculum did not establish at trial that it suffered lost-profit damages extending beyond the non-compete period, we affirm the Superior Court's decision affirming the trial court's denial of lost-profit damages on alternative grounds.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice Wecht files a concurring opinion.